[Civ. No. 4474. Fourth Dist. Jan. 27, 1953.]

ESTHER LERNER et al., Respondents, v. RIVERSIDE CITRUS ASSOCIATION (a Corporation) et al., Appellants.

[Civ. No. 4475. Fourth Dist. Jan. 27, 1953.]

JOE TAVAGLIONE et al., Respondents, v. RIVERSIDE CITRUS ASSOCIATION (a Corporation) et al., Appellants.

Wood, Crump, Rogers, Arndt & Evans, Guy Richards Crump, Walter Clayson and Donald Stark for Appellants.

Thompson & Colegate, H. L. Thompson, Best, Best & Krieger and Gerald Brown, for Respondents.

GRIFFIN, J.—These two actions are for alleged damages due plaintiffs from defendants for claimed fraud practiced in securing contracts for the handling and sale of plaintiffs' orange crops through the facilities of defendant Riverside Citrus Association. The complaints in both cases are similar in nature. By stipulation they were consolidated for trial and on appeal. The briefs of appellants raise the same points.

The Tavaglione complaint alleges generally that during March, 1948, defendants solicited and obtained from plaintiffs an agreement for the picking, packing, handling and marketing of the citrus fruit then growing on plaintiffs' property; that with intent to deceive and defraud plaintiffs and to induce them to contract with defendants, they falsely and fraudulently represented to plaintiffs that the net proceeds to the owners for navel oranges picked, packed, hauled and sold by defendant association for the then current season, had averaged approximately 3.10 cents per pound net to the grower; that in fact the net proceeds to the owners for such oranges had averaged only 1.62 cents.

The damage claimed was $3,996.18, based on 214,489 pounds, which it is alleged returned to plaintiffs the sum of $2,652.98.

Defendants answered and denied generally the allegations of the complaint, admitted the net returns to growers for the season involved did not amount to 3.10 cents per pound or any sum in excess of 2.01 cents; that of the 214,489 pounds of navel oranges picked, defendant association packed and sold 128,988 pounds; that 14,680 pounds were sold in loose form; and that 64,101 pounds were sent to by-product plants,

leaving 6,720 pounds of culls which were unfit for use; that defendants paid plaintiffs the net return of $3,121.56.

Defendants counterclaimed for a mistaken overpayment of $115.24, and cross-complained for liquidated damages in the amount of $4,050, for alleged violation by plaintiffs of the by-laws of the association while plaintiffs were members of it.

As to the Lerner complaint, it is alleged that on March 28, 1948, defendant association, through its agent, defendant Heinze, solicited plaintiffs to handle their crop of oranges; that plaintiffs advised defendant Heinze that plaintiffs had been offered $3.10 per cwt. for the fruit on the trees, and all expense of picking, packing, and selling was to be borne by the purchaser; that defendants fraudulently represented to plaintiffs that the net receipts for navel oranges picked, packed and hauled by defendant association up to March 28, 1948, for the then present season, had averaged $3.31 per packed box, when in truth it averaged only $1.62. Plaintiffs' complaint was amended to allege that the market value on March 28th was $3.10 per cwt. or $4,665.53, on the Esther Lerner property, and $7,713.63 on the remaining property. As to the Esther Lerner property $2,240.54 damages were claimed. As to the other property, it is alleged that 150,501 pounds or 1,374 packed boxes were taken from that property, and that the net return of $1.86 per packed box was paid to plaintiffs. The prayer for damages was $3,659.45.

The answer denies the material allegations of the complaint and avers that defendant association picked 2,842 field boxes weighing 150,501 pounds and packed and sold 1,608 packed boxes and 122 packed boxes in loose form or the equivalent of 370 packed boxes of 22,206 pounds and picked 4,788 field boxes weighing 248,827 pounds from the remaining property equivalent to 2,575 packed boxes; that it sold in loose form the equivalent of 428 packed boxes and delivered for processing the equivalent of 442 packed boxes or 26,509 pounds; that from the Esther Lerner property there were 55 boxes of culls not saleable and the other property 129 such boxes; that defendant association paid plaintiff Esther Lerner $2,640.71 and the other plaintiffs $4,485.67. Judgment was in favor of Esther Lerner for $2,024.82 and the other plaintiffs, Sidney Lerner and Bernice Spiegel for $3,227.96. The court found against defendants on their counterclaim and cross-complaint.

The main contention on appeal is that the evidence is insufficient to support the court's findings, which findings generally are in accord with the allegations of plaintiffs' com-

plaints. The court specifically found that the statement made by the association's agent, that the net receipts to growers dealing through the association up to March 29, 1948, averaged $3.31 per packed box, was false and untrue and made without regard to its truth or falsity because the association was not able to ascertain the net return for such crops until the close of that final year; that defendants picked and marketed from the grove belonging to Esther Lerner and other plaintiffs the amounts set forth in defendants' answer, and found that the net return from the Esther Lerner grove was $2,640.71, and the others $4,485.67; that the reasonable market value of oranges growing on the trees of Esther Lerner was $3.10 per cwt. or $4,665.53,and the sum of $3.10 per cwt. on the trees of the other plaintiffs, valued at $7,713.63. Judgment was for the difference.

As to the Tavagliones, there was a similar finding that the amount defendants picked, packed and marketed, sold in loose form and delivered to by-products, as well as culls, amounted to the total indicated in defendants' answer; that the net returns were $3,168.64, and that the market value of the fruit growing on the trees was $6,649.16. Damages were for the difference or $3,480.52.

It has been held that the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true, is declared by the code to amount to actual fraud. If, therefore, one asserts that a thing is true within his personal knowledge, or makes a statement as of his own knowledge, or makes such an absolute, unqualified and positive statement as implies knowledge on his part, when in fact he has no knowledge whether his assertion is true or false, and his statement proves to be false, he is as culpable as if he had wilfully asserted that to be true which he knew to be false, and is equally guilty of fraud. (Civ. Code, § 1710, subd. 2; *Daley* v. *Quick*, 99 Cal. 179 [33 P. 859]; 12 Cal.Jur., p. 747, § 27.)

Defendants, in their briefs, concede that the evidence shows that Heinze, the agent of defendant association, made the representations claimed (although Heinze denies making them) to M. H. Lerner, an experienced grower who was well versed in the method of growing and handling fruit through associations, and who was, at all times, acting as agent for his wife and children in handling the groves involved.

It appears from the evidence that plaintiffs did sign membership cards in defendant association, agreeing to allow the

association to pick, pack, and handle their fruit through regular channels of the association, and that M. H. Lerner had previously been a member of another cooperative association and that Tavaglione had previously been a member of defendant association but had withdrawn therefrom. Tavaglione claimed that he did not know what he was signing at the time he signed the membership card due to the fact that he did not have his glasses, as well as other claimed reasons, and the court so found. It also found that he was not a member of the association by reason of the fraud. ■ It is plaintiffs' position, and the court so found, that by reason of the false and fraudulent statements of the agent of the defendant association, they were induced to sign the membership cards and enter into the contract with the association, and had it not been for such false representations they would not have done so. Although the finding that Tavaglione did not know what he was signing may be questioned, we conclude that such finding is immaterial in view of the general finding that plaintiffs were induced to sign by reason of the false representations of defendant association's agent, which finding is amply supported by the evidence.

The main argument is that there is no causal connection between the representation that the members of the association, for the then current season, "had averaged approximately $3.10 per cwt. net to the grower," and what plaintiffs' fruit thereafter sold for, i.e., no matter what representations defendants made or might have made to plaintiffs as to past returns to growers, the truth or falsity thereof would not or could not affect subsequent returns; that plaintiffs received for their oranges precisely what they were worth in the market when sold, and since the returns were in fact proportionately the same as those paid to all other members of defendant association, plaintiffs cannot be heard to complain, citing such authority as 37 Corpus Juris Secundum 296, section 42; and 23 American Jurisprudence 995, section 176. We see no merit to this claim.

The court found, and the evidence supports the finding, that defendants made a false and fraudulent representation as to an existing fact; that plaintiffs relied upon this representation and were induced by it to contract with defendants. The circumstances are such that the court was justified in holding that this representation was the proximate cause of the damage suffered by plaintiffs.

The next argument is that plaintiffs had no right to rely on the representation made by defendant association's agent because of the fact that plaintiffs or their agent had been a member of an association and had agreed to become members in defendant association; that they were familiar with the manner in which fruit is picked, packed, and marketed by such association, and accordingly, they were not justified in relying upon any representations of defendant association's agent which would in anywise conflict with this arrangement or the by-laws of the association; that every member of the association must be held to have knowledge of all the elements which enter into cooperative marketing agreements, citing such cases as *California Canning Peach Growers* v. *Downey*, 76 Cal.App. 1, 15 [243 P. 679]; and *Marshall-McCartney Co.* v. *Halloran*, 15 N.D. 71 [106 N.W. 293].

██ The argument is premised mainly on the claimed membership of plaintiffs in defendant association by reason of the signed membership cards executed after the making of the false representations alleged. If the signing of such membership cards was obtained by reason of the false representations made and relied upon by plaintiffs, as found by the court, no legal membership in defendant association was effected, and accordingly, plaintiffs were not bound by its by-laws or the by-laws of any other association of which they were not members. Accordingly, there is no merit to the claim of defendants that "neither Heinze nor anyone else could guarantee or assure any member of the association that he would receive any larger or different sum for his oranges than other members whose oranges were being handled in the same pool would receive."

The trial court found, upon sufficient evidence, that the false and fraudulent representations were made, that plaintiffs relied upon them, and were deceived and induced thereby to dispose of their fruit through defendant association, rather than accept a previous offer from another source of $3.10 per cwt. on the trees. ██ Whether plaintiffs were entitled to rely upon said false representations was a factual question to be determined by the trial court. (*Troy Etc. Co.* v. *Drivers' Etc. Co.*, 14 Cal.App. 152, 155 [111 P. 121]; *Neher* v. *Hansen*, 12 Cal.App. 370 [107 P. 565]; 12 Cal.Jur. 751, § 30.)

██ The final argument is that there is no evidence that plaintiffs' oranges, at the time they were sold by defendant association for plaintiffs, were worth any more than was received by the association, that section 3343 of the Civil Code

is the exclusive measure of damages in actions for fraud in the sale of property, and plaintiffs were accordingly only entitled to recover the difference between the actual value of that with which they parted and the actual value of that which they received, citing *Bagdasarian* v. *Gragnon*, 31 Cal.2d 744 [192 P.2d 935]; and *Oliver* v. *Benton*, 92 Cal.App.2d 853 [208 P.2d 375]. This court considered this section in *Lobdell* v. *Miller*, 114 Cal.App.2d 328 [250 P.2d 357], where the Bagdasarian case and other cases therein cited were discussed.

It should be remembered that M. H. Lerner testified that the reasonable market value of the fruit on the trees on March 28, 1948, was $3.10 per cwt. He offered in evidence an agreement signed by the agent of another association, subject to approval of the "main office," dated March 12, 1948, wherein that association agreed to buy plaintiffs' crop of navel oranges growing on the trees at that price. The picking and hauling was to be done at the expense of the association. Lerner's testimony is that he showed this agreement to defendant Heinze at the time and that Heinze told him "he didn't make a good sale; that his house was paying much more"; that he later phoned to Heinze that the other association did not want to pick the fruit when they agreed to pick it, and that he was going to take it away from them, and he wanted to know what the actual returns of defendant association to plaintiffs would be and that Heinze said: "How fortunate" plaintiff was because he had the returns in his pocket, and that "up to this time the house has paid the growers $3.31 a packed box"; that he asked him "how come" your house is paying a little more than competitors, and Heinze said they were anxious to obtain plaintiffs' fruit because of its high quality, and that they had an "in" on "some loose-fruit deal where they make a terrific profit"; that he then told Heinze if that is what his returns were he would be willing to ship his fruit through his association.

Tavaglione testified to a similar approach by Heinze; that he told Heinze he was offered 3 cents per pound for his fruit cash on the trees; that Heinze praised the quality of plaintiffs' fruit, brought out a few record sheets and displayed them and said: "We are averaging 3.10 cents by this; you will get 3.10 cents . . . on the trees." He then testified that the reasonable market value of his fruit on the trees as of March 23, 1948, was $3.10 per cwt. or more.

It is apparent that this price included all grades of oranges and that the reasonable or actual value of the property with

which plaintiffs parted was 3.10 cents per pound on the trees, and this was the basis used by the court in its determination, and not the basis suggested by defendant association. The evidence supports the court's conclusion in this respect. The damage, therefore, would be the difference between that amount and the amount actually received by plaintiffs from defendant association.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 26, 1953. Schauer, J., was of the opinion that the petition should be granted.