[Civ. No. 10793.   Third Dist.   Aug. 30, 1965.]

MODOC MINERAL & OIL COMPANY, Plaintiff and Respondent, v. CAL-VADA DRILLING & EXPLORATION COMPANY et al., Defendants and Appellants.

Robert E. Krause and Paul B. Baker for Defendants and Appellants.

Daly B. Robnett for Plaintiff and Respondent.

PIERCE, P. J.—Defendants appeal from a judgment granting plaintiff rescission of an oil well drilling contract and awarding plaintiff $32,815.25 in damages.

Defendants' principal argument on appeal is that the trial court acted on insufficient evidence in finding that a certain written instrument entitled a ''lease agreement'' dated June 9, 1960, was not the true agreement between the parties. All other arguments, excepting one to be noted below, rest upon the existence and binding effect of that agreement.

The facts found by the trial court include the following: that prior to June 9, 1960, defendant Reeves, acting for himself and his joint venturer, defendant Myers, solicited a contract from plaintiff (acting through Oliver Armstrong, its vice-president, and W. F. Ash, its secretary-treasurer). Defendants agreed to drill an oil well for plaintiff on lands which plaintiff had under lease. That lease required plaintiff to cause an oil or gas well to be drilled upon the premises within one year. In the event the well had not been drilled within that period the lease would automatically expire. Reeves represented that he and Myers had had broad and successful experience in drilling oil and gas wells in various parts of the United States and particularly in California,

that they had the ability to furnish, install and operate all necessary, proper and adequate equipment including drilling rig, drill pipe, tools and other necessary and proper equipment for efficient drilling; that they could and would skillfully drill on said leased lands a well to a depth of 5,000 feet. On June 9, 1960, Reeves told Ash that it would take him and his associate a little time to assemble the equipment and in the meantime he would like to have Ash sign a written instrument which he had prepared so that he, Reeves, could present it to Myers to show there was a "possible" deal. The instrument presented was the "lease agreement" referred to above. The agreement names Cal-Vada Drilling & Exploration Co. (the fictitious name under which Reeves and Myers operated) as lessor and plaintiff as lessee. It is not an agreement to dig a well but a printed form agreement for the leasing of equipment. It states that the equipment had been delivered and "Lessee acknowledges receipt" thereof, agreeing that rental would start immediately. The form states: "Lessee covenants and agrees that at and before the execution hereof he had made a complete inspection and examination of said equipment and Lessee hereby acknowledges said equipment to be in good, safe and serviceable condition and fit for its intended uses," etc.

The court found that when this instrument was presented to Ash he pointed out to Reeves that plaintiff had no intention of leasing drilling equipment, knew nothing about such equipment or how to operate it and that the only type of written agreement plaintiff would enter into would be one with a qualified skilled oil well driller who could and would furnish all necessary and proper equipment and labor and who would drill a well to a depth of 5,000 feet. Ash also stated that he was only the secretary-treasurer of the corporation and had no authority on behalf of the corporation to execute the document presented. Upon Reeves' request, however, Ash signed his name to the "lease agreement," with the understanding it would only be used for the purposes requested and that any written document thereafter agreed upon between the parties would be formally executed. None of the defendants ever signed this agreement.

No other written agreement was ever signed. The court found: "The so-called Lease Agreement (Exhibit 'A') was not intended to be a lease of drilling equipment, nor was the transaction itself a lease transaction, but that, on the con-

trary, it was the understanding and agreement of the parties that the defendants were to furnish all necessary and adequate equipment and labor and drill the said well for the Plaintiff, which Defendants actually undertook to do, and that the equipment furnished and the labor and services were furnished by Defendants as a part of their agreement to drill a well for the Plaintiff. . . .''

Although contending the evidence does not support the foregoing findings, it is clear both from defendants' briefs and from the oral argument of their counsel that what they seek from this reviewing court is a reweighing of the evidence. This we have no power to do. (*Estate of Bristol,* 23 Cal.2d 221, 223 [143 P.2d 689] ; *Overton* v. *Vita-Food Corp.,* 94 Cal.App.2d 367, 370 [210 P.2d 757] ; 3 Witkin, Cal. Procedure (1954) p. 2246.)[1]  The testimony of both Ash and Armstrong supports the court's finding, and to some extent their evidence is corroborated by the fact that the lease was never signed by any of defendants; also by the circumstance that some of its recitals were obviously untrue, it being undisputed that at the time the document was signed by Ash no one connected with plaintiff corporation had ever seen any of the equipment which the written instrument states had already been received, inspected and found usable. Moreover, Reeves and Myers did not have a license to contract jointly to drill in the State of California (a fact unknown to plaintiff), and it is at least inferable that Reeves selected the ''lease agreement'' form to conceal the true status of defendants as independent contractors operating illegally. Also the activities after drilling commenced showed that the parties contemplated something other than a leasing of equipment. Defendants furnished a work crew and Myers directed the entire operations.

Since the finding that the ''lease agreement'' was not the true agreement between the parties is supported by substantial evidence, we are obligated to, and do, disregard all contentions made by defendants which depend upon its validity.

On or about July 1, 1960, defendants went onto the leased property, set up a drilling rig and commenced drilling

---

[1] The evidence of the controverted issues of the case was sharply conflicting. Throughout the briefs and during oral argument defendants' counsel presented only *their* evidence disregarding plaintiff's entirely. We reverse the process since that is our obligation here under the authorities cited above.

operations. Myers had charge of the work which continued until about July 28, 1960, when plaintiff, having discovered the defects hereinafter to be noted, stopped the work. At that time the well had been drilled to a depth of 2,111 feet.

The court found that plaintiff had relied and acted upon defendants' representations hereinabove and hereinafter related. It also found the representations were false. Substantial evidence supports those findings.

Reeves had represented to plaintiff that defendants' equipment was new. Virtually all of it was old, badly worn and not in good repair. There was evidence that "distinctive and decisive" uneven wear on the drill pipe proved almost positively that the hole being dug was crooked. The equipment was inadequate to drill a well to a depth of 5,000 feet. In fact it was so small and light that it could not efficiently drill a well to a depth greater than 3,000 feet. These matters were the subject of competent testimony. The judge viewed the premises and observed the equipment (still in place). This itself was evidence. (See: Witkin, Cal. Evidence (1958) p. 359, and cases there cited.)[2]

In an action to enforce rescission the successful plaintiff is entitled to recover the consideration he gave and any other compensation necessary to make him whole. (Civ. Code, § 1692; *Utemark* v. *Samuel*, 118 Cal.App.2d 313 [257 P.2d 656].)

Ordinarily, the party seeking rescission must offer to restore everything of value he received. (Rest., Contracts, § 480; Civ. Code, § 1691, subd. (b).) That rule is inapplicable where nothing of value has been received. (*Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414, 421 [278 P. 1038].)

In the instant case, plaintiff, before ascertaining defendants' fraud and giving notice of rescission, had made outlays, so the court found, totaling $28,105.25. Interest on this to the time of judgment was $4,710. The court also found that plaintiff had derived nothing of value from the contract. As a partial basis for this finding the court stated

---

[2]The court also found that it was the defendants' duty to furnish an item of equipment known as a "blow-out preventer." This finding is challenged. The evidence, however, showed that when a contractor agrees to drill a well, furnishing the equipment therefor, it is customary for the contractor to furnish a "blow-out preventer." Since the court, on substantial evidence, had found that this was an agreement to drill a well and not a lease-of-equipment agreement, defendants' obligation to furnish all necessary equipment follows.

that since the rescission the drilling equipment had been left in place, cemented to the well and over it and that defendants had refused to remove it. This had made it impossible for plaintiff to set up other drilling operations and complete the well prior to the expiration of plaintiff's lease.

Defendants base their contention that it was improper for the court to find plaintiff had derived no benefits upon the following argument: They offered evidence that other oil and gas explorations in the area had been fruitless and witnesses who gave opinions that no oil was present in that area. Therefore, they contend, plaintiff lost nothing by its expenditure of $32,815.25 for a crooked hole dug with equipment inadequate and incapable of reaching a 5,000-foot depth because had the contracted-for drilling been completed plaintiff would have merely thrown away more money. This argument is unsound. Plaintiff's was a speculative project. The obligation undertaken by the contractors was to skillfully drill a straight hole to a depth of 5,000 feet to determine whether or not gas or oil was recoverable at that depth. All this had to be accomplished before the expiration of a one-year lease. Had the defendants established that plaintiff could have hired another company to complete the drilling, all within the lifetime of plaintiff's lease, it would be arguable that it was its obligation to do so in mitigation of damages. But the evidence is to the contrary. Defendants' argument is, therefore, illogical. We can no more assume that plaintiff has not suffered damage because a well drilled to 5,000 feet would have been unproductive than we can assume that such drilling might have brought in a gusher and that plaintiff's damages should have included a loss of profits based upon such assumption.

■ As we have shown, the trial court found, on substantial evidence, false representation by defendants of material facts knowingly made by them, intended to be believed and relied upon and actually believed and reasonably relied upon by plaintiff, to its detriment. All elements of fraud were thus present. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412 [159 P.2d 958].)

■ Defendants contend that the court erred in granting rescission because plaintiff, after the filing of its complaint, levied an attachment upon defendants' equipment. ■ The argument is based upon the theory of election of remedies. ''Whenever a party entitled to enforce two remedies

either institutes an action upon one of such remedies or performs any act in pursuit of such remedy, whereby he has gained any advantage over this other party . . . he will be held to have made an election of such remedy, and will not be entitled to pursue any other remedy for the enforcement of his right." (*De Laval Pac. Co.* v. *United C. & D. Co.,* 65 Cal.App. 584, 586 [224 P. 766]; *Steiner* v. *Rowley,* 35 Cal.2d 713, 720 [221 P.2d 9].) ■ Attachment of property is a positive act in the pursuit of a contractual right inconsistent with the right further to prosecute an action in tort for deceit asking for exemplary damages. (*Steiner* v. *Rowley, supra.*) The rule has no application under the circumstances of this case.

■ Under Civ. Code section 1692 plaintiff was entitled to sue for rescission of the contract and in the same action "be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled." Under Code of Civil Procedure section 537, subdivision 1, he was entitled to attach. That section provides: "An action brought pursuant to Section 1692 of the Civil Code shall be deemed an action upon an implied contract within the meaning of that term as used in this section."

■ Moreover, and even if this were not the law, the doctrine of election of remedies is a form of estoppel and, as in other instances of estoppel, an affirmative defense which ordinarily must be specifically pleaded, unless it appears on the face of the complaint. (See 2 Chadbourn, Grossman and Van Alstyne, Cal. Pleading, § 1605; *Yosemite Park & Curry Co.* v. *Department of Motor Vehicles,* 177 Cal.App.2d 448, 457 [2 Cal.Rptr. 431]; *Karapetian* v. *Carolan,* 83 Cal.App.2d 344 [188 P.2d 809, 1 A.L.R.2d 1075]; *Carter* v. *Superior Court,* 142 Cal.App.2d 350, 358 [298 P.2d 598].) ■ Here the claim was not pleaded. In fact it was not even raised until defendants' closing brief on appeal. No good reason having been shown for the delay, we would be justified in refusing to recognize a contention thus dilatorily raised. (*Wilson* v. *Board of Retirement* (1957) 156 Cal.App.2d 195, 207 [319 P.2d 426].)

The judgment is affirmed.

Friedman, J., and Regan, J., concurred.