[Civ. No. 11411. Third Dist. May 8, 1967.]

JEROME LeMIRE, Plaintiff and Respondent, v. LOUIE QUEIROLO, Defendant and Appellant.

Tebbe, Correia & Kleaver and J. P. Correia for Defendant and Appellant.

Albert H. Newton, Jr., Charles E. Hurley and Ross L. Bigler for Plaintiff and Respondent.

PIERCE, P. J.—The appeal is by defendant Louie Queirolo from a judgment following a jury verdict for plaintiff Jerome LeMire in the sum of $12,000 against said Queirolo as an individual and against defendants Walter Everett Lyman and Caruso Produce Express for injuries incurred in a multi-vehicle accident on January 3, 1965.[1]

---

[1]Defendants Lyman and Caruso Produce Express filed timely notices of appeal but have subsequently abandoned their appeals, which we will dismiss. Another defendant, James Brown, driver of the Queirolo equipment, was not served.

The principal question on appeal is sufficiency of the evidence to support a judgment against Queirolo as an individual.

We disallow Queirolo's contention that he was not individually liable. Our holding of liability is based upon (1) Queirolo's estoppel (under circumstances we will discuss below) to assert corporate ownership and operation of the truck involved in the accident; also (2) independent substantial evidence supporting the jury's implied finding of Queirolo's individual ownership, operation and liability.

No argument is made that the driver of the Queirolo truck was not negligent proximately contributing to the accident.

On the day of the accident James Brown, its driver, had left unattended the northbound Queirolo truck and semi-trailer on a snow-covered, winding two-lane highway in Siskiyou County. California Highway Patrolman Donald Lack arrived and started directing traffic around the equipment, but defendant Lyman driving the Caruso Produce Express truck failed to notice the obstruction to traffic and struck five vehicles (which in turn struck two others). Plaintiff, the driver of one of the five cars, was injured.

He sued Caruso Produce Express and Lyman. He also sued Louie Queirolo, the assumed[2] owner of the wholesale produce business operating the stalled equipment, and James Brown, the driver of said equipment. Queirolo was served; Brown was not. (See footnote 1.)

Appellant Queirolo's answer denied all allegations of the complaint but denied them generally. He also alleged contributory negligence and assumption of risk. During the steps preceding trial he also submitted 26 interrogatories and took depositions. In his pretrial statement, although his general denial was repeated, Queirolo also reiterated the affirmative defenses mentioned and requested further discovery. The pretrial conference order framed the issues as follows: "The issues are negligence; all defendants allege contributory negligence. Furthermore, defendant Queirolo alleges assumption of risk. (The issues are as set forth in the pleadings except as herein stated.)"

At that state of the proceedings no disclosure was made of any contention that the business which Queirolo operated was incorporated or that the truck belonged to or was being operat-

---

[2]We explain our use of the word "assumed" hereafter.

ed by a corporation. Even on the first day of the trial, which started on November 9, 1965, such disclosure was withheld with apparent deliberation. The court asked: "Is there a question concerning ownership of the truck?" This question was answered by the attorney for Queirolo as follows: "Our defendant was not there. He has no way of knowing what the matters were." On the second day of the trial Queirolo's claimed shield of a corporation emerged.

Queirolo then, for the first time, testified the business was owned by a family corporation. The testimony was corroborated by his manager.

The case is strikingly similar to *Mayberry* v. *Coca Cola Bottling Co.,* 244 Cal.App.2d 350 [53 Cal.Rptr. 317], decided by this court August 1966 (hearing by Supreme Court denied).

There a complaint mistakenly named a corporation defendant in a personal injury action rather than a partnership bearing the same name. The corporation filed an answer in which it denied the allegations and also, as here, set up an affirmative defense of contributory negligence. There was no hint of a dual identity. There, as here, counsel for the corporation took depositions from the plaintiff. ". . . The corporation's pretrial statement listed several issues, without the slightest intimation that plaintiff's mistake in identity would be raised at the trial. Plaintiff's counsel, apparently unaware of impending procedural bombardment, filed a routine pretrial statement indicating the issues to be negligence, injury and damages. The court entered a pretrial conference order substantially adopting the defendant's pretrial statement. . . ." (*Idem.,* 244 Cal.App.2d at pp. 351-352.) Plaintiff's error did not become apparent until at the trial the sales manager of the partnership was called by plaintiff as an adverse witness. Service of process had never been made on the partnership, nor had it ever appeared in the lawsuit. In *Mayberry* this court stated at page 354: "The court's file itself exhibited a series of steps by the corporate defendant which could only perpetuate plaintiff's error beyond the point of repair. *A defendant with a shatterproof alibi had no need to file an answer alleging contributory negligence, no need to take the plaintiff's deposition.*" (Italics added.)

There is a close parallel between the conduct of defendant Queirolo in the case before this court and the conduct of the corporate defendant in the *Mayberry* case. Here, too, affirmative defenses were pleaded, reiterated at pretrial, and inten-

sive processes of discovery were pursued by a defendant who, if his contentions of corporate ownership and operation were true, should have had no interest in the litigation. Throughout, until the explosion touched off by Queirolo at the trial, he conducted himself as the actual owner and operator of the truck and business involved in the accident. This he did with knowledge of plaintiff's belief the right defendant had been named—a belief which, as the discussion below will develop, had been furthered by the highway patrolmen's investigation and their report.

We cannot, of course, be sure that Queirolo's counsel followed the almost invariable practice of attorneys in personal injury litigation of examining the available data from the filed accident report. If he did, he not only knew the fact, he knew the source, of plaintiff's mistake—if there was a mistake—regarding the entity sued. As in the *Mayberry* case, the mistake did not become apparent until the trial was underway. Even then, as we have noted above, Queirolo's counsel prolonged the deception by evading the court's question as to whether ownership was being contested.

Application of the rule in *Mayberry* is different than here. Applicability is the same. It is true that in *Mayberry* the question was one of the bar of the statute of limitations which is not true in the case before us because the case was tried before the one-year statute (Code Civ. Proc., § 340, subd. 3) had expired. Here there is an attempt to upset the verdict of a jury. In one respect the case at bench is stronger than *Mayberry*. There no doubt existed that the wrong entity had been sued. Here there is a conflict in the evidence. The conflict is whether the corporation, consisting, as Queirolo himself put it, of "Myself, my wife, and a bookkeeper," was real or a wraith. Queirolo in response to the first question asked him when examined under Code of Civil Procedure section 2055 was asked and answered: "Q. Mr. Queirolo, what is your profession or occupation? A. *I'm* a wholesale produce dealer." (Italics supplied.)

The facts above show, and we hold, that there was a clear and deliberate plan and design (if indeed a bona fide corporation was a proper defendant to have been sued[3]) to take

---

[3]After having put the testimony of Queirolo and his manager into evidence stating that the former's business was incorporated, Queirolo's counsel then sought with some success to block all efforts by plaintiff to prove that it was not. All questions on cross-examination calculated

advantage of a mistake in which Queirolo was a sedulous actor in perpetuating and perhaps in perpetrating.

The adversary system does not make of the law a mere game of rules. Queirolo tried to do that here. He was playing hide and seek or blindman's buff with plaintiff, with the jury, and with the trial court from the outset of this litigation and throughout its course.

■ Moreover, there was evidence which, while it was not of the strongest probative value, was substantial that Queirolo, as an individual, was in fact the owner of the equipment and of the business in which it was being used. As to the latter fact we have noted above Queirolo's testimony in answer to the first question asked him when he was examined under section 2055, "I'm a wholesale produce dealer." There was also evidence that at the time of this accident the truck was carrying a cargo of lettuce from Brawley, California, to Oregon, consigned to Safeway Stores.

Two California Highway Patrolmen, Officers Lack and Sosey, testified on direct examination that there was painted on both doors of the cab of the truck "Louis Queirolo Produce" or "Louie Queirolo Trucking." California Vehicle Code section 27900 requires that the name of the owner, lessor or lessee be displayed on equipment carrying freight for hire. Two photographs of the truck are in evidence. One of them (plaintiff's exhibit 3) shows painted in large letters on the left door: "Louie Queirolo Trucking," and underneath that "Portland, Ore." Separating these inscriptions is what appears to us to be a narrow line. Queirolo's counsel when cross-examining Officer Lack produced a magnifying glass and asked the witness if the letters "I-n-c" were written there. He evoked a speculative and equivocal opinion from that witness that they might have been. Officer Sosey could remember nothing he saw that indicated the owner was a corporation. He had stood beside the truck door and was thus in the best position to have seen what was written thereon. We have examined the photograph under a magnifying glass of the highest power available to us. We cannot distinguish the letters "I-n-c," cannot positively state they are not there but have concluded the jury was entitled to draw its own inferences after

to test whether the corporation was fact or sham were objected to on the ground that the corporation was not a party. These objections were sustained. This was error. Since, as stated, the existence of this corporation had emerged as a factor in the case only on the second day of the trial, its reality both as owner of the truck and of the business of hauling was an issue and exclusion of evidence relevant to that issue was error.

viewing the photograph and after hearing the testimony of the officers.

The 1965 registration certificates in evidence show both the truck and trailer to be registered to ''Louie Queirolo Trucking Inc.'' Queirolo and his manager stated these were on the equipment at the time of the accident. Officer Sosey, however, testified *1964* certificates and license plates were then on the equipment. Either these, or the door inscriptions, or information received from Brown (the driver of the equipment) that he drove for ''Louie Queirolo,'' or all of these facts in combination, could have been the basis for the statement in the accident report which Officer Sosey prepared that ''Louie Queirolo'' and not a corporation was the truck owner and employer of the driver.

 Appellant contends the statement of Brown to Officer Sosey that he was driving for Queirolo was improperly admitted in evidence as hearsay.

The rule is well established that the extrajudicial statements of an agent are not admissible to prove the fact of agency without independent evidence of the agency. (*Kast* v. *Miller & Lux,* 159 Cal. 723, 728 [115 P. 932]; *Swinnerton* v. *Argonaut Land & Dev. Co.,* 112 Cal. 375, 379 [44 P. 719]; *People* v. *Dye,* 75 Cal. 108, 113 [16 P. 537]; *Fesler* v. *Rawlins,* 43 Cal.App.2d 541, 544 [111 P.2d 380].)

In the instant case the extrajudicial statement by Brown to Officer Sosey that he was driving for Queirolo was admitted by the trial judge on the theory it was a part of the res gestae and thus an exception to the hearsay rule. There is authority for such admissibility. (See notes in 67 A.L.R. 170 and 150 A.L.R. 623.)

We experience difficulty, however, in classifying Brown's declarations as properly a part of the res gestae rule. Neither the subject matter under discussion between Brown and the officer nor the circumstances under which the declarations were made seems to indicate the type of hearsay intended to qualify under the res gestae exception to the hearsay rule. (Cf. *People* v. *Basaure,* 235 Cal.App.2d 21, 37-38 [44 Cal. Rptr. 831] : see Evid. Code, § 1240.)

There is another exception to the hearsay exclusion to which the declaration of Brown bears a closer resemblance. Evidence Code section 1224 restates a rule that ''When the liability . . . of a party to a civil action is based in whole or in part upon the liability . . . of the declarant . . . evidence of a statement made by the declarant is as admissible

against the party as it would be if offered against the declarant in an action involving that liability . . . ." That rule, quoted in material part, is said in the California Law Revision Commission comment to said Evidence Code section to restate Code of Civil Procedure section 1851 (in effect when this case was tried).[4] That section was applied in *Ingram* v. *Bob Jaffe Co.*, 139 Cal.App.2d 193, 198 [293 P.2d 132] (hearing by Supreme Court denied) where, as stated in the California Law Revision Commission comment, "a statement of a person permitted to operate a vehicle was admitted against the owner of the vehicle in an action seeking to hold the owner liable on the derivative liability of vehicle owners established by Vehicle Code Section 17150." (But note comment of Justice Stone in *Markley* v. *Beagle*, ██ (Cal.App.) 54 Cal.Rptr. 916.)

Whether or not admission of the declaration of Brown was proper is not decisive here. If error, it was harmless. We see no reasonable probability the jury would have reached an opposite conclusion had the error not occurred. (Cal. Const. art. VI, § 13; ██ *Vasquez* v. *Alameda*, 49 Cal.2d 674, 677 [321 P.2d 1]; *Wilkinson* v. *Southern Pac. Co.*, 224 Cal.App.2d 478, 484 [36 Cal.Rptr. 689]; *Martin* v. *Pacific Gas & Elec. Co.*, 204 Cal.App.2d 316, 332-333 [22 Cal.Rptr. 291].)

It may be stated at the outset that Brown's extrajudicial statement that he was driving for "Louie Queirolo" had minimal probative value. Any reasonable jury would realize that a truck driver would know little and care less whether his boss ran his business as an individual or as a family-owned corporation. But finally and conclusively, the evasive procedural practices of defendant designed, as we have shown, to hide the corporate entity to delude plaintiff must inevitably have left the jury as scornful of the deception as they leave this court in declaring an estoppel to exist.

The appeals from the order denying motion for a new trial are dismissed as the order is not appealable.

The judgment on the verdict in favor of plaintiff and against Queirolo is affirmed. A motion for judgment in favor of Queirolo notwithstanding the verdict was purportedly

---

[4]That section provided: "And where the question in dispute between the parties is the obligation or duty of a third person, whatever would be the evidence for or against such person is prima facie evidence between the parties."

granted by the court. Argument pro and con has been made whether the judgment on said motion was timely made. We do not enter that debate. The judgment notwithstanding the verdict was in any event erroneous and is vacated.

Friedman, J., concurred.