[Civ. No. 36874. Second Dist., Div. Five. Mar. 30, 1971.]

HARLEY W. HOWELL, as Trustee, etc., Plaintiff and Respondent, v. COURTESY CHEVROLET, INC., Defendant and Appellant.

394

**COUNSEL**

Paris & Paris and Reynold F. Paris for Defendant and Appellant.

Low & Stone and Herbert N. Wolfe for Plaintiff and Respondent.

**OPINION**

**FRAMPTON, J.*—**

### Statement of the Case

Plaintiff sued for rescission of the purchase from defendant of three trucks, each equipped with rubbish bodies, for a total purchase price of $47,738.43, on the grounds of fraud, negligence, mistake and failure of consideration.

Plaintiff contends that it relied upon an invoice prepared by defendant Courtesy Chevrolet, Inc. (hereafter Courtesy), which included the description and cost of the three trucks with the rubbish bodies mounted thereon. Courtesy contends that this invoice was prepared for the convenience of plaintiff's agent, Western Leasing Co. (hereafter Western), and upon receipt of the total purchase price from plaintiff, Courtesy transmitted that

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

portion of the purchase price allocated to the rubbish bodies to a body company designated by Western, and the plaintiff's lessee, Aladdin Sanitation and Engineering Corporation (hereafter Aladdin).

The body company which received the payment was owned by Aladdin and never installed the rubbish bodies on the trucks.

The court rendered judgment for partial rescission for negligent misrepresentation and for failure of consideration caused by the fault of Courtesy in the sum of $28,136.40, which represented the cost of the three rubbish bodies. This sum was reduced by a remittitur in the amount of $1,100.

## Statement of Facts

Plaintiff, Harley W. Howell, was the trustee for the D. L. Peterson Trust, created for the purpose of administering certain lease agreements on behalf of AFLC, Inc., the beneficiary under the trust agreement. The funds to purchase equipment that would be subject to lease arrangements administered by plaintiff were provided by AFLC, Inc., pursuant to the trust agreement. Western was an independent business entity which submitted to plaintiff certain proposals for the leasing of equipment.

Lloyd Bolen, president of Aladdin, in about June of 1964, ordered four trucks to his specifications from Courtesy. These trucks were financed by means of a lease agreement entered into with Bank of America. A short time thereafter, Mr. Bolen ordered four additional trucks, which order was later reduced to three in number, to be financed in the same manner, and, as in the previous transactions, Courtesy prepared an invoice for the three trucks (the same trucks involved in the subject litigation) for Bank of America. On that invoice there was no reference to rubbish bodies. When Bank of America notified Courtesy that it would not finance the second transaction, Bolen advised the salesman for Courtesy that Western was arranging for the financing of the three trucks. At Bolen's request, Herman Walker, the salesman for Courtesy, met with William Babcock, president of Western. In discussing the leasing of the three trucks, Walker told Babcock that the trucks had been delivered to Bolen and had been in the latter's possession since July or August 1964 and that Bolen was making arrangements for the purchase and installation of rubbish bodies on the three trucks.

Babcock, on behalf of Western, agreed to finance Bolen in the purchase of the trucks, but insisted that it be handled as a "package deal," that is, that the trucks and rubbish bodies be invoiced together to "simplify our bookkeeping."

At the request and direction of Babcock, Walker, on September 12, 1964, prepared an invoice for Courtesy directed to: "D. L. Peterson, Trust, 2707 North Charles St., Baltimore 18, Maryland, c/o Western Leasing Company, 9465 Wilshire Blvd., Beverly Hills, Calif."

This invoice described the three trucks and included the cost of three rubbish truck bodies mounted on the chassis of the trucks. The total invoice was for $47,738.43. The amount of this total allocated to the rubbish bodies was $28,136.40. The amount of the cost of the rubbish bodies was given to Walker by both Babcock and Bolen.

Subsequent to the preparation of the invoice, and on September 24, 1964, prior to any monies being paid by plaintiff, Babcock, on behalf of Western, sent a letter to Courtesy, to the attention of Walker, reading as follows:

"This letter will authorize you to release three (3) 1964 Chevrolet trucks, Model # C 6803, being leased through our company to Aladdin Sanitation and Engineering Corporation, P. O. Box 221, Malibu, California.

"The invoices will be paid through our Baltimore office the first of October."

On or about September 25, 1964, Courtesy was presented with an invoice from A. R. Body Company for the installation of the rubbish bodies. This invoice, bearing date September 25, 1964, was in the sum of $28,136.40. Both Babcock and Bolen had previously advised Walker that A. R. Body Company was installing the rubbish bodies.

On October 13, 1964, Bolen went to the offices of plaintiff in Baltimore, Maryland, and secured a check drawn by AFLC, Inc., in favor of Courtesy in the sum of $47,738.43, which represented the total cost of the trucks with the rubbish bodies mounted thereon. The check was delivered to Bolen upon the presentment to plaintiff of three forms designated as "SP-29's," and a lease agreement executed by Aladdin, and personally by Bolen and Yvonne Bolen, his wife, after an extensive investigation as to the financial status of Aladdin and the Bolens. No inspection of the trucks was made by plaintiff prior to the issuance of its check in payment therefor.

Bolen and D. W. Fraser, who represented himself as the owner of A. R. Body Company, took the check for $47,738.40 to Courtesy and Courtesy, in turn, delivered its check to Fraser in the sum of $28,136.40, for the rubbish bodies pursuant to the information and invoice previously supplied it by Babcock and Bolen.

Mr. Fraser never installed bodies on the trucks and testified that Bolen

was the true owner of A. R. Body Company. Fraser testified that he was general manager of Aladdin, and acted "like a front man" for Bolen in connection with his having signed the certificate of doing business under a fictitious name as sole owner of A. R. Body Company, and that the company never engaged in the business of manufacturing rubbish truck bodies.

Bolen failed to make the payments on the lease agreement as they became due and disappeared about six months thereafter. Not until plaintiff had received notice that Aladdin was in bankruptcy did it repossess the trucks, at which time (May 1965) it was discovered that two of the trucks had no rubbish bodies on them, and one of them had an "old beat up body" on it.

On November 8, 1965, after some discussion between Mr. Irving Reifman, one of counsel for plaintiff, and representatives of Courtesy, concerning the circumstances surrounding the transaction wherein the trucks were sold without rubbish bodies mounted on the chassis of the trucks, plaintiff served a notice of rescission on Courtesy. The within litigation followed.

Based upon the foregoing facts, the trial court found, among other things, that plaintiff justifiably relied on the representation made on the invoice of September 12, 1964, which stated that trash bodies were included on the trucks delivered by Courtesy; there were no trash bodies on the three trucks purchased at the time the invoice was presented to plaintiff, or at the time said trucks were delivered, or when the sum of $47,738.43 was paid to Courtesy; that such representation was made negligently and with intent and purpose of inducing plaintiff to make the payment as invoiced; there was a partial and material failure of consideration when Courtesy failed to deliver the trash bodies, and that Western Leasing Company was neither the actual nor ostensible agent of plaintiff, or any of its affiliates. Judgment followed in favor of plaintiff and against Courtesy in the principal sum of $28,136.40, later reduced by $1,100 by remittitur after hearing on the motion for a new trial. The appeal is from the judgment.

### Contentions on Appeal

Courtesy raises the following questions on appeal: (1) Was the lower court's finding that Western Leasing Company was neither the actual nor ostensible agent of plaintiff or any of its affiliates supported by substantial evidence, and error as a matter of law. (2) Whether there was substantial evidence to support the finding that Courtesy was negligent. (3) Whether the lower court should have found negligence on the part of plaintiff as a matter of law thereby precluding the granting of relief for the negligence, if any, of Courtesy. (4) Whether the court erred in granting

a partial rescission for the sum of $28,136.40 which represented the cost allocated to the rubbish bodies. (5) Whether the court should have found a waiver of the right to rescind as a matter of law. (6) Whether the amount of damages awarded was excessive as a matter of law. (7) Whether the conclusion of law that the plaintiff, Harley W. Howell, Trustee for the D. L. Peterson Trust, was the proper party plaintiff is error.

### Agency and Negligence

Mr. Herbert Hightower, vice-president and operating officer of AFLC, testified with respect to the relationship between AFLC and Western Leasing Company that: "Well, it wasn't very much at all except for the fact that Peterson, Howell & Heather, through its executive vice president, Mr. Smith, Charles J. Smith, was trying to develop some leasing business on the West Coast, and there was a contract made with a Mr. Babcock with a company known as Western Leasing Company for the referral of business to Peterson, Howell & Heather, and then from Peterson, Howell & Heather to AFLC." He testified further that to his knowledge there was no written agreement between Western Leasing Company and Peterson, Howell & Heather, D. L. Peterson Trust or AFLC concerning the referral of leasing agreements, and that AFLC made all of the decisions as to whether or not to accept leases submitted to it. When Mr. Hightower was asked whether, to his knowledge, Western Leasing Company had any authority to accept or reject lease agreements, Courtesy's counsel objected to the question on the ground that it called for the conclusion of the witness, and such objection was sustained. It does not appear that this subject was pursued further by either counsel. Certainly there is no evidence here of an agency created by express agreement, authorizing Western to bind AFLC or its associates in any manner with respect to lease agreements originating with Western and referred by Western to AFLC or its associates for acceptance or rejection.

Courtesy urges that the following evidence discloses, as a matter of law, that Western was the ostensible agent for AFLC and its associates with authority to bind them with respect to leasing agreements originating with Western: (1) The testimony of Walker (of Courtesy) wherein Bolen had stated to him that Western was a subsidiary of Peterson, Heather & Howell, the latter firm being known to Walker; (2) the letter to Courtesy from Western stating that payment for the trucks would be made by "our" Baltimore office; (3) a wholly owned subsidiary of Peterson, Howell & Heather (Transelco) was formed for the purpose of segregating the business referred to AFLC by Western; (4) testimony of Hightower that Charles J. Smith, executive vice-president of Peterson, Howell & Heather, had contacted Babcock of Western for the referral of business to Peterson, Howell &

Heather and then from Peterson, Howell & Heather to AFLC; (5) section 17 of the lease agreement between Aladdin and AFLC which reads: *"Creation and Administration of Agreement.* It is understood and agreed that Western Leasing Company has created this Agreement, but that, from and after the date hereof, Western Leasing Company shall have 'no further interest in this Agreement. It is further understood and agreed that TRANSELCO, INC. will administer this Agreement and will perform the functions therein provided to be performed by the Lessor. Lessee shall have no liability to Western Leasing Company or to TRANSELCO, INC. for any fees, costs and expenses in connection with the creation or administration of this Agreement, and shall only be liable for the obligations of the Lessee hereunder. Lessor hereby agrees to indemnify and hold Lessee harmless from and against the payment of any such fees, costs or expenses."; (6) Courtesy's invoice directed to D. L. Peterson Trust c/o Western Leasing Company; (7) a finder's fee was paid to Western by Transelco for finding the business; (8) the text of a letter dated August 14, 1964, from Smith to Babcock, stating, "When I was at your office you asked about how we use the truck lease for other than mobile equipment. The attached supplement accomplishes this. I assume that you will need a supply, and so I shall send about 100 copies to you under separate cover." Attached to his letter is a blank form designated "Supplemental Agreement" between AFLC, INC., as lessor "and ————, as Lessee"; (9) exhibits C, D, E, G, H, M, O, P and Q which Courtesy urges contain a voluminous number of documents and correspondence relating to and describing a plan with Western for the procuring of leasing business in the Los Angeles area; and (10) "The Thawley file" which Courtesy urges shows approximately 50 prospective transactions in which Western participated.

We have examined the exhibits and correspondence above referred to and find nothing therein which would compel a holding that Western acted as the agent of plaintiff or its affiliates in obtaining and referring prospective lessees to plaintiff. This documentation goes no further than to show that Western was entitled to a fee on the referral of a prospective lessee only if the proposal was accepted by AFLC. In fact, one letter offered in evidence by Courtesy (marked exh. E), written on November 4, 1964, by Peterson, Howell & Heather to Mr. A. N. Willis, president of Commercial Credit Company, Baltimore, Maryland, states in part: "Hammond has stated that we should assume responsibility for Western Leasing activities. This, we cannot do because the arithmetic does not justify it. We give you a fixed yield (subsidized by us during the first six months of the period) and we give Western Leasing about 25% of our fee during the first two years. As you know, we do all the work."

It may be noted here that none of the documentation above referred to

ever reached Courtesy, except for the letter (exh. Z) written under date of September 24, 1964, by Western to Courtesy wherein it was stated that "The invoices [for the trucks with rubbish bodies mounted] will be paid through *our* Baltimore office the first of October." (Italics added.) The only other circumstance which may have misled Courtesy as to Western's right to bind AFLC and its affiliates in leasing transactions was the statement, testified to by Walker, Courtesy's salesman, made to him by Babcock, that "This [Western] is a subsidiary of Peterson, Heather & Howell." The record does not disclose that AFLC or its affiliates were ever aware of the contents of the letter of September 24, 1964, or of the statement made by Babcock to Walker, until at trial.

An agent is one who represents another, called the principal, in dealings with third persons. (Civ. Code, § 2295.) An agency is either actual or ostensible. (Civ. Code, § 2298.) An agency is actual when the agent is really employed by the principal. (Civ. Code, § 2299.) ▮ An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. (Civ. Code, § 2300; *Bayuk* v. *Edson,* 236 Cal.App.2d 309, 315 [46 Cal.Rptr. 49].)

It is clear from the foregoing that in order to establish ostensible agency, the principal must intentionally communicate this relationship to the third party, or negligently cause the third person to believe that there is an agency relationship.

▮ The declarations of an agent are not admissible to prove the fact of his agency or the extent of his power as such agent. (*Swinnerton* v. *Argonaut L. & D. Co.,* 112 Cal. 375, 379 [44 P. 719]; *LeMire* v. *Queirolo,* 250 Cal.App.2d 799, 805 [58 Cal.Rptr. 804].) In *Ernst* v. *Searle,* 218 Cal. 233, 240 [22 P.2d 715], the Supreme Court, in quoting from 1 Mechem on Agency, second edition, section 743, page 527, stated the rule as follows: " 'An assumption of authority to act as agent for another of itself challenges inquiry. Like a railroad crossing, it should be in itself a sign of danger and suggest the duty to "stop, look and listen." It is therefore declared to be a fundamental rule, never to be lost sight of and not easily to be overestimated, that persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it.' " (See also *Hill* v. *Citizens Nat. Trust & Sav. Bk.,* 9 Cal.2d 172, 177 [69 P.2d 853].)

▮ We are satisfied that the trial court's finding that Western was

neither the actual nor ostensible agent of the plaintiff or any of its affiliates finds substantial support in the record, and that Courtesy's preparation of the invoice showing that rubbish bodies were mounted on the truck chassis, and causing such invoice to be presented to plaintiff in such form, without investigation, constituted negligence on Courtesy's part.

### Claimed Negligence on Part of Plaintiff

Courtesy urges that the trial court should have found negligence as a matter of law on the part of plaintiff; that Courtesy pleaded contributory negligence as an affirmative defense, requested a specific finding thereon and the trial court declined to make such finding which, under the circumstances, is claimed to be reversible error.

In support of its contention that it was entitled to assert the defense of contributory negligence of the plaintiff in an action for fraud and deceit, Courtesy cites and relies on *Osgood* v. *City of San Diego,* 17 Cal.App.2d 345 [62 P.2d 195], an action for damages for personal injuries sustained in an automobile accident and *Henderson* v. *Braden,* 35 Cal.App.2d 88 [94 P.2d 625], an action for damages for wrongful death. Neither of the foregoing cases is authority for the right to assert as a defense to an action for fraud and deceit the contributory negligence of the plaintiff.

"[T]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true, is declared by the code to amount to actual fraud. If, therefore, one asserts that a thing is true within his personal knowledge, or makes a statement as of his own knowledge, or makes such an absolute, unqualified and positive statement as implies knowledge on his part, when in fact he has no knowledge whether his assertion is true or false, and his statement proves to be false, he is as culpable as if he had wilfully asserted that to be true which he knew to be false, and is equally guilty of fraud. [Citations.]" (*Lerner* v. *Riverside Citrus Assn.,* 115 Cal.App.2d 544, 547 [252 P.2d 744].)

The elements of plaintiff's cause of action in the case at bench which must be pleaded and proved are (1) defendant made a representation of a material fact; (2) that such fact was false; (3) that defendant knew it to be false or negligently or recklessly made the assertion as a fact without reasonable grounds to believe it to be true; (4) that such representation was made with intent to induce the other party to act upon it; and (5) that it was relied upon by the other party to his damage. (Cf. *Clar* v. *Board of Trade,* 164 Cal.App.2d 636, 645 [331 P.2d 89].)

"It is usually said that the plaintiff must show not only actual reliance . . . but justifiable reliance; i.e., that the circumstances were such as to make it reasonable for him to accept the defendant's statements without an independent inquiry or investigation." (2 Witkin, Summary of Cal. Law, Torts, § 203, p. 1388.) "The liberal rule of justifiable reliance, with its rejection of the defense of contributory negligence . . . applies to negligent as well as to intentional misrepresentation." (2 Witkin, Summary of Cal. Law, Torts, § 208, p. 1394.)

██ "Where one is justified in relying, and in fact does rely, upon false representations, his right of action is not destroyed because means of knowledge were open to him. In such a case, no duty in law is devolved upon him to employ such means of knowledge." (*Blackman* v. *Howes,* 82 Cal.App.2d 275, 279 [185 P.2d 1019, 174 A.L.R. 1004].) ██ In the case at bench the issue was whether plaintiff was justified in relying on the representation of Courtesy. Here, the trial court found that "Plaintiff justifiably relied on the representation made on the invoice, which stated that trash bodies were to be included with the trucks delivered by Courtesy Chevrolet." This was a proper, and the only finding necessary on the issue here raised by Courtesy. Contributory negligence, although pleaded by Courtesy, did not raise a material issue in the action, and no finding thereon was necessary or proper.

### Partial Rescission

██ In the case at bench, Courtesy was interested only in the sale of the three trucks as chassis, and not with special rubbish bodies mounted thereon. The manufacture and the mounting of the rubbish bodies upon the chassis appear from the record to have been specialty equipment which Courtesy was not set up to provide. Bolen, of Aladdin, was to provide these special rubbish bodies and have them mounted on the chassis. Babcock insisted that the trucks and the rubbish bodies be handled as a "package deal" to "simplify our bookkeeping." From the foregoing arrangement, Courtesy, as an accommodation to Babcock and Bolen, rendered an invoice to the D. L. Peterson Trust for the amount of the three trucks, setting forth thereon, as a separate item, the cost of the three rubbish bodies mounted in the sum of $28,136.40. The arrangement was that upon the receipt by Courtesy of payment of the full amount of the invoice from plaintiff, Courtesy, in turn, would pay A. R. Body Company upon the latter's invoice for the cost of the manufacture and mounting of the rubbish bodies. The record does not disclose that Courtesy had contracted with A. R. Body Company for the manufacture and mounting of such bodies. Courtesy simply volunteered to handle the funds representing the cost of the rubbish bodies in the foregoing manner as an accommodation to Babcock and Bolen. As far as

Courtesy was concerned the sale of the trucks was a separate transaction from that of the manufacture and installation of the rubbish bodies, over which it exercised no supervision or control.

Plaintiff, by its complaint sought total rescission of its contract and restoration of the total amount paid of $47,738.43. The court awarded partial rescission in the amount of $28,136.40 being the amount allocated on the invoice to the rubbish bodies.

"(b) A party to a contract may rescind the contract in the following cases.

". . . . . . . . . . . . . .

"(2) If the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds.

". . . . . . . . . . . . . .

"(4) If the consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause." (Civ. Code, § 1689; cf. *Nelson* v. *Sperling,* 270 Cal.App.2d 194, 195 [76 Cal.Rptr. 481].)

■ "The general rule is that one must rescind all of his contract and may not retain rights under it which he deems desirable to have and repudiate the remainder of its provisions. [Citations.] The theory underlying such a rule is that retention of only the benefits of the transaction amounts to unjust enrichment and binds the parties to a contract which they did not contemplate.

"This rule, however, is not controlling in the case of a severable or divisible contract such as Exhibit 'B.' ■ Generally speaking, the test of whether a contract is divisible is that if the consideration is single, the contract is entire, but if the consideration is apportioned, the contract may be regarded as severable. [Citation.] And a contract may be severable as to some of its terms, or for certain purposes, but indivisible as to other terms, or for other purposes." (*Simmons* v. *Cal. Institute of Technology,* 34 Cal.2d 264, 275 [209 P.2d 581].)

■ Here, Courtesy was interested only in selling its trucks. It had no right, title or interest in the rubbish bodies which were supposedly to be manufactured and installed by A. R. Body Company, Bolen's *alter ego.* It does not appear that to grant rescission only as to that portion of the contract relating to failure of consideration based upon the cost of the rubbish bodies, and to deny rescission for the total amount of the contract will result in unjust enrichment to the plaintiff or in any way prejudice Courtesy. Courtesy was paid for the full value of its trucks as invoiced. Under these

circumstances it was not error to render judgment based upon failure of consideration for the value of the rubbish bodies only.

### Waiver

█ Courtesy urges that the trial court should have found, as a matter of law, that plaintiff had waived its right to rescind.

Mr. Hightower testified that the first time plaintiff knew that there might not have been rubbish bodies on the trucks was when plaintiff was notified that Aladdin was in bankruptcy (about May 1965). Plaintiff later respossessed the trucks, at which time it was discovered that no rubbish bodies, as originally invoiced, were mounted on them. Thereafter, a representative of plaintiff discussed the transaction with Mr. Walker of Courtesy. Notice of rescission was served upon Courtesy in November 1965.

The record discloses that after the notice of rescission was served, plaintiff sent some additional bills to Aladdin and that the account with Aladdin was charged off about June of 1967 when the bankruptcy proceeding was concluded. The record also discloses that plaintiff filed a claim in the Aladdin bankruptcy proceeding for the $47,738.43 claimed as damages for the alleged fraud in the sale and purchase of the trucks as well as delinquent lease rentals due from Aladdin. The amount of this claim against Aladdin was made contingent upon the amount of plaintiff's recovery against Courtesy in the present action.

█ "The defense of waiver raises an issue of fact to be decided after a consideration of all the circumstances of the particular case, and is a question primarily for the trial court." (*Hefferan* v. *Freebairn,* 34 Cal.2d 715, 722 [214 P.2d 386].) █ Here, plaintiff trustee was situated in the State of Maryland. Upon learning of the bankruptcy of Aladdin, plaintiffs' representative came to California to investigate and ascertain the location and condition of the leased equipment. Upon discovering that the trucks were not equipped with rubbish bodies, as represented, plaintiff's representative contacted Courtesy to ascertain the facts and circumstances surrounding the sale of the trucks. What negotiations may have transpired and the length of time involved in winding up such investigation is not disclosed by the record.

"The courts have frequently declared that there is no artificial rule as to the lapse of time which will justify the application of the doctrine of laches. Each case must be determined upon the basis of its facts, and in the absence of palpable abuse of discretion the trial court's finding upon the issue will not be disturbed upon appeal. [Citations.]

█ "A vendee who has been defrauded by his vendor is entitled to a

reasonable time to investigate the falsity of the representations and the time so consumed cannot be charged as unreasonable delay." (*Williams* v. *Marshall*, 37 Cal.2d 445, 455 [235 P.2d 372].) Under all of the circumstances here presented, we cannot say, as a matter of law, that plaintiff waived its right to rescind.

### Amount of Damages

 As heretofore pointed out the trial court awarded plaintiff $28,136.40 based upon the billed cost of three rubbish bodies which had never been manufactured or mounted on the trucks as represented by Courtesy's invoice to plaintiff.

Mr. Hightower testified that plaintiff had received, as a dividend from the bankruptcy court, the sum of $2,170.36, based upon plaintiff's claim theretofore filed. The amount of the claim in bankruptcy against Aladdin was made contingent upon the outcome of the present litigation as to the purchase price of the trucks. In addition, the claim included $15,686.70 for unpaid rentals under the lease agreement between AFLC, Inc., and Aladdin. There had been paid by way of rentals under the lease prior to bankruptcy the sum of $10,419.74. The three trucks were sold by AFLC, Inc., in March or April 1967, for the sum of $2,800. The sum of $1,100 remitted from the judgment was to carry out the terms of a stipulation, apparently overlooked by the trial court at the time of rendition of the judgment, consenting to the allocation of trustees' fees in the bankruptcy proceeding. From the foregoing it appears that plaintiff received a net judgment in the rescission action in the sum of $27,036.40. Plaintiff received from lease rentals prior to bankruptcy $10,419.74; from a dividend from the bankrupt estate $2,170.36, and from the sale of the trucks $2,800, making a total of $15,390.10 recouped as against an investment of $47,738.43 in equipment, a substantial part of which was nonexistent.

 "In an action to enforce rescission the successful plaintiff is entitled to recover the consideration he gave and any other compensation necessary to make him whole." (*Modoc Mineral & Oil Co.* v. *Cal-Vada Drilling etc. Co.*, 236 Cal.App.2d 868, 873 [46 Cal.Rptr. 508]; Civ. Code, § 1692.) We are of the opinion that the damages awarded bear a reasonable relationship to the loss suffered, and cannot be said to be excessive as a matter of law as claimed by Courtesy.

### Proper Party Plaintiff

 Courtesy questions the right of plaintiff to bring and maintain the action.

The record reveals that plaintiff Harley W. Howell was trustee under an express trust created by AFLC, Inc., and of which AFLC, Inc., was the beneficiary. As such trustee, Howell was a proper party to bring and maintain the action, and it was not necessary to join, as parties plaintiff, those for whose benefit the action was prosecuted. (Code Civ. Proc., § 369; *Triplett* v. *Williams,* 269 Cal.App.2d 135, 137-138 [74 Cal.Rptr. 594]; 2 Witkin, Cal. Procedure, Pleading, § 465, pp. 1452-1453.)

The judgment is affirmed.

Kaus, P. J., and Reppy, J., concurred.