[Civ. No. 55638. Second Dist., Div. One. June 17, 1980.]

OLGA CORLETT et al., Plaintiffs and Appellants, v.
ROBERT W. GORDON et al., Defendants and Respondents.

**COUNSEL**

Chaves & Weiss and Leonard Sacks for Plaintiffs and Appellants.

Harrington, Foxx, Dubrow & Canter, Peter Abrahams, Bonne, Jones, Bridges, Mueller & O'Keefe, Jerrie S. Weiss, Buck, Molony, Nimmo & Ammirato, Mark D. Rutter, Overton, Lyman & Prince, John D. McCurdy, Barbara J. Groth, Hillsinger & Costanzo, Judith O. Stein, Stearns, Gross, Moore & Rusch and Harward A. Stearns for Defendants and Respondents.

**OPINION**

**JEFFERSON (Bernard), P. J.**—Plaintiffs appeal from an order dismissing three consolidated actions for want of prosecution in failing to bring the actions to trial within two years after the complaints were filed. (Code Civ. Proc., § 583, subd. (a).)

The complaint in each action was filed on August 22, 1974; plaintiff at that time was represented by Attorney Ruth Ohanessian.

In action C 97832, plaintiffs Olga and Ernal Corlett, Sr., sought damages against three hospitals, ten physicians, and an answering service for the wrongful death of three of the Corlett's children, Carlos, Richard and Ernal. Plaintiffs' complaint alleged negligence in obstetrical care and medical services prior to, during, and after birth of each child. It was alleged that Carlos was born September 26, 1963, and died August 30, 1972; that Richard was born January 17, 1971, and died several hours after birth; and that Ernal was born August 22, 1973, and died several hours after birth.

In action C 97833, Olga and Ernal Corlett, Sr., sought damages against all of the above defendants except one of the hospitals; Olga also was seeking damages for personal injuries and Ernal was seeking

damages for loss of consortium. That complaint was predicated in part upon the same acts of alleged negligence in Olga's pregnancies involving Carlos, Richard, and Ernal, and, further, upon alleged negligence in treatment of Olga in pregnancy and birth of a fourth child, Alvin (born December 15, 1972) and in a fifth pregnancy that resulted in "spontaneous birth" of a baby girl (born May 24, 1970).

In action C 97834, Alvin, by guardian ad litem, sought damages against two of the hospitals and four of the physicians for alleged malpractice of defendants in medical treatment prior, at, and after his birth—resulting in permanent injury to his eyes (referred to as "acquired estropia").

Pursuant to motions of some of the defendants in March and April 1974, the actions were consolidated for all purposes.

On November 25, 1974, plaintiffs served interrogatories on one of the physicians. Substantially identical interrogatories were served on five of the other physicians on December 6, 1974, on two of the other physicians on December 30, 1974, and on another of the physicians on January 13, 1974. The last of the answers to those interrogatories was filed on December 19, 1975.[1]

Aside from propounding those interrogatories, plaintiffs did not take any affirmative action toward prosecuting the actions, and never filed an at-issue memorandum (Cal. Rules of Court, rule 206).

In January 1978 the insurer of defendants Gordon and Paysse was liquidated.

On March 6, 1978, approximately three years and seven months after the complaints were filed, three of the defendant physicians noticed a motion to dismiss the action for want of prosecution, pursuant to Code of Civil Procedure section 583, subdivision (a), which provides that the court, in its discretion, may dismiss an action for want of prosecution if it is not brought to trial within two years after it is filed. Among other things, a declaration filed in support of the motion stated that the only discovery conducted by plaintiffs to the date of the noticed motion to dismiss was "a set of boilerplate interrogatories to a few of the numer-

---

[1]The record does not show any demand or motion by plaintiffs as to answers to those interrogatories or claim by plaintiffs as to delay in the answers thereto.

ous defendants," and that plaintiffs had not taken any depositions nor filed an at-issue memorandum.

The motion to dismiss the action was set for hearing on April 25, 1978, more than 45 days after filing of the notice of motion. (Cal. Rules of Court, rule 203.5(a).) Other defendants joined in the motion.

Four days prior to the hearing, plaintiffs (represented by new counsel, Chaves & Weiss) filed opposition to the motion, supported by a declaration of Mr. Chaves, which stated in substance: When the complaints were filed, the plaintiffs were represented by Ruth Ohanessian. On April 21, 1977, Chaves requested that Ohanessian transmit the plaintiffs' file to his office and sign a substitution of attorneys. At first she made demands for a percentage of the attorneys' fees. Later she signed the substitution and he received the file. On May 19, 1977, he filed the substitution of attorneys, but it was not until February 15, 1978—nine months later—that he realized he did not have the major portion of the file. Chaves asserted that plaintiffs' attorneys of record, including declarant, "have acted with reasonable diligence and the claims herein have not been allowed to slumber until evidence has been lost or memories faded." Chaves also set forth that there had been a continuing course of discovery though initiated in major part by the defendants. Under such circumstances, lack of intensive discovery by plaintiffs does not constitute a lack of diligence on the part of the plaintiffs herein.[2]

On February 15, 1978, plaintiff Ernal Corlett, Sr., told Chaves that Ms. Ohanessian did not transfer the entire file and had a large box in her office containing the remainder of plaintiffs' file. Chaves requested the remainder of the file, and Ohanessian renewed demands for a percentage of the attorneys' fee; he rejected this demand. On March 9, 1978, he received the notice of motion to dismiss. Chaves states that on April 5, 1978, he agreed to Ohanessian's demands in order to have sufficient time to respond to the motion. Finally, on April 10, 1978, he received a carton containing the remainder of the plaintiffs' file.

Plaintiffs' opposition to the dismissal motion was thus predicated on justifying a delay of over three years on the basis of plaintiffs' boiler-

[2]Mr. Chaves' declaration describes discovery proceedings (interrogatories, requests for admissions, depositions) instituted by defendants, not by plaintiffs. He states that plaintiffs responded to 550 interrogatories and that plaintiffs Olga and Ernal were deposed in May and June 1975.

plate interrogatories, plaintiffs' response to defendants' discovery actions, and asserted problems in obtaining a substitution of plaintiffs' attorneys. It is to be noted that the substitution-of-attorneys problem arose more than two years after the complaints were filed.

The order of dismissal was entered on April 25, 1978—a date three years and eight months after the plaintiffs' complaints were filed. Plaintiffs' subsequent motion for reconsideration of the order of dismissal was denied.

■ Plaintiffs' contention on this appeal is that the trial court abused its discretion in granting the motions to dismiss. ■ Code of Civil Procedure section 583, subdivision (a), confers upon the trial court a *discretion* to dismiss an action for want of prosecution if it is not brought to trial within two years after it was filed. (*City of Los Angeles v. Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543 [133 Cal.Rptr. 212].) It is an accepted principle of law that "a reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice. Thus, in *Loomis* v. *Loomis*, 181 Cal. App.2d 345, 348-349..., it was said: 'It is fairly deducible from the cases that one of the essential attributes of abuse of discretion is that it must clearly appear to effect injustice. [Citations.] Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.'" (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; see, also, *Sanborn* v. *Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 416-418 [134 Cal.Rptr. 402, 556 P.2d 764].)

■ "While it is true that an order granting a motion to dismiss for dilatory prosecution will be more closely scrutinized on review than one denying the motion" (*Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 404 [153 Cal.Rptr. 912]), the *Denham* principle of limiting appellate review to a determination of whether there has been an abuse of discretion applies, nevertheless, to such a trial court's order, as well as to an order denying a motion to dismiss for dilatory prosecution.

■ It was aptly observed in *Lowe* v. *Thomas* (1970) 11 Cal.App.3d 867, 869-870 [90 Cal.Rptr. 202], that "[a] plaintiff may show good

cause for delay and if the cause is reasonable, in a legal sense, dismissal would constitute an abuse of discretion on the part of the trial judge. [Citations.] However, the burden is upon a plaintiff to justify his delay in bringing the case to trial [citations], and it is his duty 'at every stage of the proceedings to use diligence to expedite his case to a final determination.'"

Rule 203.5 of the California Rules of Court sets forth a number of factors which a trial court must consider in exercising its discretion in ruling on a motion to dismiss an action under Code of Civil Procedure section 583, subdivision (a). ▇ In exercising its discretion, the trial court must consider factors such as the length of time between the filing of the complaint and the motion to dismiss, bearing in mind that as the time passes from two years nearer to five, the showing required to excuse a failure to bring a case to trial grows greater and greater. (*Feingersh v. Lutheran Hosp. Society* (1977) 66 Cal.App.3d 406, 411 [136 Cal.Rptr. 155]; *Membrila v. Vonett Sales Co.* (1967) 250 Cal. App.2d 299, 300 [58 Cal.Rptr. 544].) Other matters to be considered include the court's file and the affidavits and supporting data submitted by the parties; the extent to which the parties engaged in any settlement negotiations or discussions; the diligence of the parties in pursuing discovery or other pretrial proceedings, including any extraordinary relief sought by either party; the nature and complexity of the case; the nature of any extensions of time or other delay attributable to either party; the condition of the court's calendar and availability of an earlier trial date if the matter was ready for trial; whether the interests of justice are best served by dismissal or trial of the case or by imposing conditions on its dismissal or trial; and any other fact or circumstance relevant to the fair determination of the issue.

▇ The trial court's order of dismissal in the case at bench stated that there was good cause for the dismissal, implying a finding that plaintiffs did not have sufficient cause for the long delay. In *Lopez v. Larson* (1979) 91 Cal.App.3d 383, 406 [153 Cal.Rptr. 912], the court commented: "[T]he court expressly stated in the judgment of dismissal its finding that '[p]laintiff has not shown sufficient or good cause for the lengthy delay.' That alone was a sufficient basis for the judgment of dismissal."

In the case at bench it is to be noted that plaintiffs did not file an at-issue memorandum in the more than three-year period from the filing of the complaint until the filing of the first notice of a motion to

dismiss the actions. In addition, the plaintiffs did not engage in any affirmative action toward prosecuting their case in the 45-day period from the notice of the motion to dismiss until the hearing thereof. (See *Stephan* v. *American Home Builders* (1971) 21 Cal.App.3d 402, 405 [98 Cal.Rptr. 354].)

Plaintiffs make the argument that public policy requires that tolerance be allowed for the problems of small firms in handling their case loads; that the average member of the public does not have resources to retain a well-staffed firm of attorneys and must obtain such representation by sole practitioners and small firms which do not always have the personnel available to give minute attention to their files; that to place a sword over the head of small firms by maintaining exacting requirements of prosecution will compel such firms to restrict their caseloads, thereby making themselves unavailable to members of the public in urgent need of legal representation in meritorious cases; and that the inevitable effect of draconic rulings such as the one at issue herein will be to deprive the general public of needed representation that is generally more economical than that which can be secured from a firm with a large staff of attorneys.

■ We are unable to accept this argument of plaintiffs. Code of Civil Procedure section 583, subdivision (a), does not lend itself to an interpretation that plaintiffs who are represented by sole practitioners or small law firms are to be judged by a different standard than those represented by larger firms in determining the issue of whether reasonable steps have been taken to bring a case to trial. Every attorney, whether he is a *sole* practitioner, a member of a large firm or a member of a small firm, and regardless of the extent of his legal experience, owes an obligation—not only to his client but also to the courts and the justice system—*not* to undertake legal representation in matters unless he has adequate time to pursue the matter with reasonable diligence.

We are not unmindful of the fact that circumstances may exist in the case of a sole practitioner or of a member of a small firm—circumstances which constitute a justification for the failure to expedite an action for trial and thus preclude a dismissal of the action under Code of Civil Procedure section 583, subdivision (a). Thus, unexpected illness of a sole practitioner or of one of the attorneys of a small firm may constitute such a circumstance. In *Denham*, the circumstances involved illness and a break-up of a small law firm by a member being appointed to the bench. Clearly, circumstances constituting cause for delay in

prosecuting an action to trial may vary depending upon the character or makeup of the firm representing a plaintiff. But this consideration of varying circumstances is to be distinguished from the proposition of law being advanced by plaintiffs in the instant case—that a sole practitioner and a small law firm should be judged by a different standard than that used for larger law firms in evaluating a lawyer's conduct under Code of Civil Procedure section 583, subdivision (a).

■ Plaintiffs also urge that the trial court's action was an abuse of discretion because there was no showing that defendants had been prejudiced by the delay in getting to trial. Defendants assert that they may rely upon the principle that prejudice is inherent in protracted delay and will be presumed when such delay is unjustified. (*Lopez* v. *Larson, supra,* 91 Cal.App.3d 383, 401; see also *Dunsmuir Masonic Temple* v. *Superior Court* (1970) 12 Cal.App.3d 17 [90 Cal.Rptr. 405].)

The theory of presumed prejudice to a defendant from an unjustified protracted delay in getting to trial was criticized in *City of Los Angeles* v. *Gleneagle Dev. Co.* (1976) 62 Cal.App.3d 543, 563 [133 Cal.Rptr. 212], by the court's observation that "[w]ith the passage of rule 203.5 [Cal. Rules of Court], imposing on the trial judge the duty to examine specifically enumerated factors, including the delay attributable to *either party*, the interests of justice, and other facts or circumstances relevant to a fair determination of the issue, this 'presumption of prejudice' retains questionable validity." (Italics in original.) But in *Lopez* v. *Larson, supra,* 91 Cal.App.3d 383, 402, the court disagreed with *Gleneagle* and observed: "[W]e are persuaded that the notion that prejudice to the defendant inheres in protracted delay has a sound basis and merits continued recognition."

We find it unnecessary to decide whether *Gleneagle* or *Lopez* states the better rule relative to whether there should be a presumption of prejudice to a defendant from the fact of an unjustified protracted delay in getting to trial. We hold that the matters presented to the trial court on the hearing of the motion to dismiss the action were sufficient to support a finding that there was prejudice to defendants in the failure of plaintiffs to bring the action to trial within two years of the filing date.

■ It has been aptly remarked that "[t]he purpose of Code of Civil Procedure section 583 is dual: one is effectually the same as that of

statutes of limitation—they are both statutes of repose, seeking to discourage stale claims 'to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' [Citations.] Secondly, the dismissal section is designed to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice." (*Dunsmuir Masonic Temple* v. *Superior Court, supra,* 12 Cal.App.3d 17, 22-23.)

Here, defendants were required to defend against negligent acts occurring as remote in time as 1969. In addition, Code of Civil Procedure section 583, subdivision (a), focuses upon a detriment to the judicial system as well as to the defendant which is attendant upon tardy litigation of a claim. "One of the purposes of the statutory provision permitting dismissal for failure to prosecute an action to trial within two years is to compel reasonable diligence in the prosecution of actions, thereby expediting the administration of justice—a matter of significance not only to the parties involved in the particular lawsuit but to the public as well. [Citations.] This statutory purpose relating to the prompt administration of justice has taken on added significance in the wake of the law explosion and the resulting backlog of cases in the courts." (*Lopez, supra,* 91 Cal.App.3d 383, 400.)

Although we recognize that justice is generally better served when cases are heard on their merits, we must also recognize that, in some instances, justice will be better served by a dismissal of cases. The case at bench we find to be such a situation. We therefore conclude that the trial court did not abuse its discretion in granting the motion to dismiss the plaintiffs' actions.

The order from which the appeal is taken is affirmed.

Lillie, J., and Hanson (Thaxton), J., concurred.