[Civ. No. 5679. Fifth Dist. May 7, 1981.]

DON EMERY HOUSE et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

COUNSEL

Alexander M. Wolfe for Plaintiffs and Appellants.

George Deukmejian, Attorney General, John M. Morrison, Carol Hunter, Deputy Attorneys General, Martin, Crabtree, Schmidt & Zeff and Thomas D. Zeff for Defendants and Respondents.

OPINION

ZENOVICH, J.—This appeal concerns two issues: (1) whether appellants failed in showing that an employee of the State Board of Control (Board) was an ostensible agent for the State of California (State) so as to estop the State from asserting the three-year provision relating to service of a summons; and (2) whether the trial court abused its discretion in dismissing the action against defendants City of Manteca, Thompson and Sorrnick pursuant to Code of Civil Procedure section 583, subdivision (a).

On December 15, 1976, appellants filed a complaint against various police officers and their employing governmental agencies.[1] The crux of the complaint alleged that, on February 9, 1976, at 7:30 p.m., the officers stopped an automobile containing appellants and "falsely ordered [appellants] out of their automobile at gun point; at which time defendants searched and handcuffed [appellants], and forced them to kneel on the pavement in uncomfortable positions causing cramping of [appellants'] legs, and forcibly detained [appellants] at gun point for a period of approximately 30 minutes until defendants realized that they had made a false arrest and released [appellants] from custody." Appellants prayed for $150,000 in general damages.[2]

Defendant City of Manteca and defendant Thompson were served with a summons and complaint on December 12, 1979. Defendants Sorrnick, County of San Joaquin, and the State were served on Decem-

---

[1]The named defendants were: Elvis Sholer, Robert Prutch, State of California, Officer Wegner, Officer Bagnell, Officer Rogers, Officer Thompson, Sergeant Sorrnick, City of Manteca, and County of San Joaquin.

[2]Appellants' claims for damages upon defendants State of California, City of Manteca, and County of San Joaquin were all respectively denied before filing of the complaint.

ber 14, 1979. The Board was the agency served by appellants' counsel.[3] Defendant Sholer was served on December 17, 1979, and the return of service was filed on December 18, 1979.

On January 9, 1980, the State filed a motion to dismiss the action and a motion to quash service of summons. Defendants City of Manteca, Wegner, Bagnell, Rogers and Thompson answered the complaint on the same day.

Appellants filed opposition papers to the State's motions, and further supplemental points and authorities and declarations were submitted by both parties. On March 18, 1980, the trial court granted the State's motions to dismiss and to quash service of summons. A formal order of dismissal was filed on March 27, 1980.

On April 2, 1980, a motion of dismissal for failure to serve summons and file return within three years was filed by defendants Wegner, Bagnell, and Rogers. This motion was granted by the trial court, and an order of dismissal and judgment in accordance therewith were filed on April 21, 1980. No appeal has been taken from this order.

A motion to dismiss pursuant to Code of Civil Procedure section 583, subdivision (a), was filed by defendants City of Manteca, Wegner, Bagnell, Rogers, Thompson and Sorrnick on April 2, 1980. Opposition papers were submitted by appellants on April 18, 1980. Arguments on the motion were heard on May 22, 1980. At that time, counsel for defendants presented an oral motion to strike portions of a declaration filed by appellants' counsel. The trial court granted the motion to dismiss in favor of defendants City of Manteca, Thompson, and Sorrnick,[4] as well as striking certain portions of a declaration and memorandum submitted by appellants' counsel. A judgment reflecting this dismissal was filed on May 28, 1980.

On April 14, 1980, appellants filed a motion to vacate and set aside the order of dismissal and the order granting motion to quash service of summons, which had previously been entered in favor of the State. After opposition papers were filed, the trial court denied appellants'

---

[3]The return of service on the Board appears to have been filed on December 17, 1979.

[4]The earlier dismissal order apparently rendered the subsequent motion inconsequential for defendants Wegner, Bagnell, and Rogers.

motion to vacate on April 30, 1980. A formal order reflecting this disposition was filed on May 7, 1980.

Appellants filed a notice of appeal from the orders in favor of the State and from the order of dismissal in favor of the City of Manteca, Thompson, and Sorrnick.[5]

The pertinent facts are drawn from declarations and points and authorities found in the clerk's transcript on appeal. No reporter's transcript of any oral proceedings was prepared for this appeal.

## FACTS IN THE APPEAL AGAINST THE STATE

Initial declarations by appellants' counsel and his daughter, Elisa B. Wolfe, describe the following sequence of events. On December 14, 1979, appellants' attorney telephoned the Board in Sacramento and was told by an employee that the agency was the proper entity upon which to make service of the summons and complaint in which the State was a named defendant. He and daughter Elisa went to the office of the Board on the same day. A receptionist told him that the Board was a proper representative for service and directed him down a hallway "where we were told that service would be accepted." Appellants' attorney and Elisa were greeted by Lily Betzing, an office services supervisor of the Board, who informed them "that she was authorized to accept service on behalf of the State Board of Control." Betzing confirmed that the Board could accept service on behalf of the State. Elisa then served the summons and complaint on Betzing, who wrote "Received 12/14/79 LJB" on the face of the summons. Appellants' attorney also declared, "Had the said LILY BETZING advised us that her agency was not authorized to accept service on behalf of the State of California, and that the Attorney General was the one to serve, then we would certainly have gone directly to the Attorney General's office, which would mean travelling a relatively short distance." Moreover, he stated relying

---

[5]In their opening brief, appellants note "that the action is still pending as against the County of San Joaquin, and it is anticipated that the venue of the action will be transferred to that county."

Following oral argument on the State's motions to dismiss and to quash service of summons, the trial court dismissed the action as to defendants Sholer and Prutch. It appears that return on service was not timely filed as to Sholer, and that no return was filed as to Prutch. No appeal was taken from these dismissals.

upon Code of Civil Procedure section 416.50 in making service on the Board.[6]

In response, the State submitted the declarations of Gary Longholm, assistant executive secretary for the Board and a supervisor of Betzing, and Betzing. After stating his familiarity with Board office practices, he noted "That the State Board of Control and its employees are not authorized to receive service on behalf of the State of California or the Attorney General." Longholm then stated: "That I have instructed Lily Betzing and the rest of our professional staff that they are not authorized to receive service on behalf of the State of California, and that the State Board of Control is not authorized to receive service on behalf of the State of California.

"That I have instructed the professional employees of the State Board of Control that pursuant to Government Code section 955.4, the Attorney General is authorized to receive service on behalf of the State of California.

"That any statement made by a State Board of Control employee to the effect that the State Board of Control or an employee of the State Board of Control is or was authorized to receive service on behalf of the State of California, does not reflect the authority and policy of the Board of Control, and such statements are not ratified, condoned, adopted or authorized by the State Board of Control.

"That when personal service is attempted upon the State Board of Control on behalf of the State of California, that our policy is as follows:

"1. We inform the individual that the State Board of Control is not the proper party to be served.

"2. We instruct the individual that the Office of the Attorney General, or other departments as provided in sections 955.6 and 955.8 are the proper parties to serve.

---

[6]Code of Civil Procedure section 416.50 provides: "(a) A summons may be served on a public entity by delivering a copy of the summons and of the complaint to the clerk, secretary, president, presiding officer, or other head of its governing body.

"(b) As used in this section, 'public entity' includes the state and any office, department, division, bureau, board, commission, or agency of the state, the Regents of the University of California, a county, city, district, public authority, public agency, and any other political subdivision or public corporation in this state."

"3. If the person attempting to serve process insists on leaving the summons and complaint, we will accept the documents and send those documents back to the attorney with a brief letter of explanation.

"4. If the State Board of Control is personally served, and if the individual insists on leaving the summons and complaint with our office, then those documents will be initialed and dated. The purpose for the initialling and dating is for our own control purposes.

"5. That if a process server insists on leaving summons and complaint with our office, it is impossible for us to force him or her to take the documents when they leave, and the purpose behind simply accepting the documents and then returning them to the attorney is to avoid personal encounters which disrupt the office routine.

"Attached is a certified copy of a letter dated December 17, 1979, signed by myself and sent to Alexander M. Wolfe, informing him that the State Board of Control is not the proper party to be served." The letter sent by Longholm informed appellants' attorney: "On December 14, 1979, we received Summons and Complaint in the above entitled action [House v. State of California]. We believe under Government Code Section 955.4 that we are not the proper party to be served."

In her declaration, Lily Betzing stated personally knowing that the Board was not authorized to receive service on behalf of the State. She also mentioned that she had not been authorized to receive such service, receiving instructions to this effect from superiors. Betzing stated instructing the receptionist and clerical staff about this absence of authorization; she noted that any contrary representation did "not reflect the authority and policy of the Board of Control, and such statements are not ratified, condoned, adopted or authorized by the State Board of Control." Betzing then explained her actions when people attempt to serve the State by leaving a copy of the summons and complaint with her. "1. I advise the person that I am not authorized to receive service on behalf of the State and I further advise the person that the State Board of Control is not authorized to receive service on behalf of the State of California.

"2. If the person attempting to serve the summons and complaint insists on leaving the papers, I inform him or her, if they do not walk out before I have a chance to do so, that I will take possession of the sum-

mons and complaint but that the papers will be returned to the attorney pursuant to Government Code section 955.4.

"3. I will then initial and date the papers which are left with me. The purpose of initialing the papers is so that our office knows which employee had contact with the process server in any given situation. The purpose of dating the papers is so that we can, consistent with our office policy, return the paper to the attorney with a brief letter of explanation within two days of the attempted service upon our office.

"That I have had instances where the process server has refused to leave the office without leaving a copy of the documents he or she was attempting to serve; that when an individual insists on leaving documents, I cannot force the person to take the documents with them when they leave; and that the purpose of taking possession and then returning the documents to the attorney is to avoid unseemly and disruptive confrontations with these persons who insist on attempting to serve the State Board of Control.

"That since I have been employed by the State Board of Control, I have never instructed anyone attempting to serve the State of California that the Board of Control is authorized to receive service on behalf of the State." She then described the particular incident involving appellants' attorney, controverting his recollection of events as follows: "That I personally recall an attempt to serve the Board of Control with summons and complaint on behalf of Don Emery House, Gerald Wayne House, and Joseph Michael House on December 14, 1979.

"That on December 14, 1979, a man came in with a young lady and the man asked if I would accept service of summons and complaint on behalf of the State of California.

"That I am informed and believe that the man's name was Alexander M. Wolfe and that the lady's name was Elisa B. Wolfe.

"That I told the man that I was not authorized to receive service on behalf of the State of California and that the State Board of Control was not authorized to receive service on behalf of the State.

"That I advised the man that the summons and complaint should be served upon the Attorney General or the Department of Transportation depending upon the cause of action.

"That I offered to show the man a copy of our standard form letter which would be used to return the papers to the attorney and that he refused to look at the letter.

"That attached hereto is a true and correct copy of the form letter which I attempted to show to the man." The attached form letter resembled the letter which was subsequently sent by Longholm to appellants' attorney.

Counterdeclarations were then submitted by appellants' attorney and Elisa Wolfe. These declarations denied the scenario of events described by Betzing in her declaration; they reiterated that she did make representations about authority to receive service on behalf of the State. Moreover, appellants' attorney acknowledged receipt of a letter from Longholm, albeit in a slightly different form.[7] He also noted that the staples had been removed from the summons and complaint served on Betzing. He "assume[d] from this that copies were made to furnish to the attorney general." Finally, in regard to the Longholm correspondence, appellants' attorney declared: "When I received Mr. Longholm's letter on December 20, 1979, this was the first time that I ever became aware of section 955.4 of the Government Code. Mr. Longholm's letter came as a shock and a surprise to me because I thought proper service had been made on the State of California particularly in light of the statements made to me by the employee of the State Board of Control with whom I spoke by telephone on December 14, 1979, the statements made to my [sic] by the receptionist at the State Board of Control, and the statements made to me by LILY BETZING."

Supplemental declarations of Longholm and Betzing reiterated the Board policies and instructions about its lack of authority to receive service on behalf of the State. Betzing again stated, "That I did not advise the people attempting service in the case of Don Emery House that the State Board of Control was authorized to receive service on behalf of the State of California."

In support of his subsequent motion to vacate the order of dismissal/quashing of service of summons, appellants' attorney submitted another declaration. He stated in pertinent part: "That attached hereto as Ex-

---

[7]Although the letter appended to his counterdeclaration lacked a "carbon copy" notation to the Attorney General's office, it coincided with the letter appended to Longholm's declaration in other respects.

hibit 'A', and incorporated herein by reference, is a copy of my telephone bill reflecting my telephone call to the State Board of Control on December 14, 1979, at 11:53 a.m. to determine whether the State Board of Control was the proper agency upon which to make service of a summons and complaint in which the State of California was named a defendant. I was told by the employee who answered my call that it was. If that employee had told me that the State Board of Control was not the proper agency upon which to serve the summons and complaint, then I certainly would have made arrangements to serve the proper agency." The State responded by noting that the above statement "adds nothing to what has already been argued in this case." It also argued that the appended copy of appellants' attorney's telephone bill was inadmissible hearsay, was in violation of the best evidence rule, and was "of virtually no probative value in this matter."

### FACTS IN THE APPEAL AGAINST CITY OF MANTECA, THOMPSON AND SORRNICK

In support of their motion to dismiss pursuant to Code of Civil Procedure section 583, subdivision (a), the above defendants argued: "The record in this case shows that over three years has elapsed since the filing of complaint in this case. The plaintiffs have done nothing to push this matter to trial since filing the action and, in fact, were delinquent in returning summons with respect to some of the defendants. The other defendants were not served until nearly three years after the action was filed."[8] Appellants' attorney filed a declaration which posited the following incident as the reason for delay in prosecuting the action: "I am a sole practitioner and there are no other lawyers in my office. On November 21, 1977, my father was involved in an [sic] motor vehicle accident in Antioch, California in which he was thrown from his pickup truck and received serious head injuries. My father remained continually hospitalized in hospitals in Antioch, Pittsburg, Concord, Orinda, San Francisco and Walnut Creek until his death on June 29, 1978. By virtue of the physical and emotional strain this caused me, I was not as attentive to my practice as I should have been and consequently I did not move as expeditiously as I would like to have done on my cases. I am trying to correct this situation, but I do not feel that my clients should have to suffer because of my problems."

---

[8]In a declaration, the defendants' attorney noted the following procedural aspects of the case from inception: December 15, 1976, complaint filed; December 12, 1979, moving defendants served; December 17, 1979, return of summons filed with respect to defendants City of Manteca, Thompson and Sorrnick.

In the above declaration, appellants' attorney initially reiterated the facts surrounding the false imprisonment and related personal information about his clients' backgrounds. Defendants' counsel presented an oral motion to strike the aforementioned portions of the declaration at the hearing before the trial court. The court eventually granted the motion to strike "on the ground that such allegations are surplusage and have no evidentiary value."

### THE APPEAL AGAINST THE STATE

Appellants' principal contention in their appeal against the State is that the trial court erred in dismissing their action and in quashing service of the summons and complaint. We are of the opinion that the lower court's action was proper. Substantial evidence supports the implied determinations that the Board was not the State's ostensible agent and that equitable estoppel did not preclude assertion of the bar of Code of Civil Procedure section 581a, subdivision (a).

As a threshold matter, it is clear that appellants did not properly serve the State. Government Code section 955.4, subdivision (a), provides that "Service of summons in all actions on claims against the State shall be made on the Attorney General." Appellants' attempted service on an employee of the Board was erroneous and, in one of his declarations, appellants' attorney admits that he based his actions on Code of Civil Procedure section 416.50 rather than Government Code section 955.4.[9] Since service requirements as those involved here are jurisdictional in nature, noncompliance deprives the trial court of jurisdiction. (Cf. *Eagle Electric Mfg. Co. v. Keener* (1966) 247 Cal.App.2d 246, 250-251 [55 Cal.Rptr. 44].)

---

[9]Appellants mistakenly argue that service upon the Board was proper under the general provisions of Code of Civil Procedure section 416.50. Since Government Code section 955.4 is a more *specific* statute, its terms prevail over the more *general* provisions of Code of Civil Procedure section 416.50.

The case of *State Air Resources Bd. v. Superior Court* (1979) 93 Cal.App.3d 803 [155 Cal.Rptr. 726] does not alter this result. Under its facts, the court applied Code of Civil Procedure section 416.50 to service of a complaint alleging an injurious reliance theory as its basis for recovery. The court noted: "[Section 955.4] of the Government Code ... applies to *tort claims*. The underlying action here is *not unequivocally a tort action*, and so service under the general sections, in our view, was and is possible *on the facts of this case*." (*State Air Resources Bd. v. Superior Court, supra*, 93 Cal.App.3d at p. 811, italics added.) Since appellants' complaint solely alleged bases of recovery sounding in tort, Government Code section 955.4 was the governing provision for service of the summons and complaint.

If the summons has not been served and return made within three years after the commencement of the action, dismissal of the complaint under Code of Civil Procedure section 581a, subdivision (a),[10] is mandatory if the plaintiff fails to prove reasonable diligence in attempting to serve and return summons. (*Hocharian* v. *Superior Court* (1981) 28 Cal.3d 714, 721, fn. 3 [170 Cal.Rptr. 790, 621 P.2d 829]; see also *Kaiser Foundation Hospitals* v. *Superior Court* (1975) 49 Cal.App.3d 523, 527 [122 Cal.Rptr. 432].) Although service and return did not occur within a three-year time frame, appellants invoke one of the implied exceptions to section 581a. They claim that the State is *estopped* from asserting a three-year provision because it conferred ostensible agency/authority upon the Board. The viability of this exception was recently recognized in the following passage from *Hocharian* v. *Superior Court*: "In *Tresway Aero, Inc.* v. *Superior Court* (1971) 5 Cal.3d 431 [96 Cal.Rptr. 571, 487 P.2d 1211], this court recognized another implied exception to section 581a in holding that a defendant may be estopped from seeking dismissal if his conduct or assertions induce detrimental reliance on the part of the plaintiff who thereby fails to serve and return summons within the three-year period. On the one hand, the estoppel doctrine is unaffected by today's decision since it is addressed primarily to the conduct of the defendant rather than the plaintiff. On the other hand, the concept of reasonableness is equally applicable since, as noted in *Tresway*, plaintiff's reliance must be reasonable for the doctrine of estoppel to apply. (*Id.*, at p. 440.)" (*Hocharian* v. *Superior Court, supra*, 28 Cal.3d at p. 721, fn. 4; see also *Billings* v. *Edwards* (1979) 91 Cal.App.3d 826, 832-833 [154 Cal.Rptr. 453] (dis. opn. of Jefferson, J.).) Since appellants suggest the State was estopped to deny service upon the Board because of the latter agency's ostensible authority, it is pertinent to examine whether estoppel bars the State's reliance on the bar of section 581a.

■ An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his

---

[10]Code of Civil Procedure section 581a, subdivision (a), reads in full:

"No action heretofore or hereafter commenced by complaint shall be further prosecuted, and no further proceedings shall be had therein, and all actions heretofore or hereafter commenced shall be dismissed by the court in which the same shall have been commenced, on its own motion, or on the motion of any party interested therein, whether named as a party or not, unless the summons on the complaint is served and return made within three years after the commencement of said action, except where the parties have filed a stipulation in writing that the time may be extended or the party against whom the action is prosecuted has made a general appearance in the action."

Unless otherwise indicated, all code references are to the Code of Civil Procedure.

agent who is not really employed by him. Similarly, "ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, §§ 2300, 2317; *Howell* v. *Courtesy Chevrolet, Inc.* (1971) 16 Cal.App.3d 391, 401 [94 Cal.Rptr. 33].) Ostensible authority is not established by the statements and representations of the agent; rather, it is created only by the acts or declarations of the principal. (*Id.*, at p. 401; *Morse* v. *Pacific Gas & Elec. Co.* (1957) 152 Cal.App.2d 854, 857 [314 P.2d 192]; *Files* v. *Derderian* (1919) 44 Cal.App. 256, 258 [186 P. 184].) As noted by *Howell*, ". . . in order to establish ostensible agency, the principal must intentionally communicate this relationship to the third party, or negligently cause the third person to believe that there is an agency relationship." (*Howell, supra*, 16 Cal.App.3d at p. 401.) The party relying on the principal's representation must do so in good faith and incur a detriment from the reliance. (Civ. Code, § 2334; *Pasadena Medi-Center Associates* v. *Superior Court* (1973) 9 Cal.3d 773, 780 [108 Cal.Rptr. 828, 511 P.2d 1180].) The elements necessary to fasten liability upon the principal closely resemble those which give rise to an estoppel. (*Id.*, at p. 779, fn. 5; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Agency and Employment, § 133, p. 738.) Unless all evidence material to the issue of ostensible authority is uncontroverted, it is an issue to be resolved by the trier of fact. (See *Pasadena Medi-Center Associates, supra*, 9 Cal.3d at p. 780, fn. 6; *Howell, supra*, 16 Cal.App.3d at pp. 401-402.)

■    Since the appellants solely base their appeal on the clerk's transcript, the evidence is conclusively presumed to support the judgment. (*Wheelright* v. *County of Marin* (1970) 2 Cal.3d 448, 454 [85 Cal. Rptr. 809, 467 P.2d 537], app. dism. and cert. den. (1970) 400 U.S. 807 [27 L.Ed.2d 37, 91 S.Ct. 65]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 240, pp. 4232-4233.) Accordingly, appellants' appeal upon the judgment roll makes it unnecessary for this court to review the sufficiency of the evidence. It is presumed that there was substantial evidence. Nevertheless, despite this technical bar to review, substantial proof supports the rejection of a finding of ostensible agency/authority in the present case.

The trial court impliedly rejected the position that the Board was an ostensible agent of the State by dismissing appellants' action. Substantial evidence underpins this determination. Declarations by both parties were conflicting about what occurred on December 14, 1979. The court below obviously credited the declarations of Gary Longholm and Lily

Betzing, which claimed the Board neither authorized nor instructed its employees to accept service on behalf of the State. This evidence supports a factual finding that the State never made any statements which would render the Board an ostensible agent or confer ostensible authority upon it. Moreover, proof presented by the State tended to undercut appellants' claim of justifiable reliance upon Betzing's statements. Betzing stated showing appellants' attorney a form letter indicating "We believe under Government Code Section 955.4 that we are not the proper party to be served." Longholm said he sent a signed letter to this effect to appellants' attorney, who acknowledged receipt. This evidence suggests that any detrimental reliance by appellants was unreasonable (Civ. Code, § 2334), thereby precluding a finding of liability under an ostensible agency/authority theory. (Cf. *Slaybaugh* v. *Superior Court* (1977) 70 Cal.App.3d 216, 225 [138 Cal.Rptr. 628].)[11]

Since the lower court resolved evidentiary conflicts against appellants, declarations presented by the State amply support a rejection of estoppel based on ostensible agency/authority.

No different stance is compelled by our Supreme Court's decision in *Pasadena Medi-Center Associates* v. *Superior Court, supra,* 9 Cal.3d 773. In that case, the defendant corporation in its application for a permit to issue stock stated that Albert Binney, Sr., was its secretary-treasurer. Plaintiff, *relying on the corporation's application,* served defendant corporation by personally serving the summons and complaint on Albert Binney, Sr. It later appeared that Binney, Sr., was not in fact secretary-treasurer. Binney, Sr., delivered the summons and complaint to Binney, Jr., who was in fact the secretary-treasurer. Our high court held the defendant corporation's designation in its application for a stock permit of Binney, Sr., as secretary-treasurer clothed him with ostensible authority to accept service of process and held the

---

[11]Appellants urge that "There has been no denial that copies of the summons and complaint were made and forwarded to the attorney general. It is submitted that by this arrangement, the attorney general has designated the State Board of Control as his agent for service." This argument was controverted by the declarations of Longholm and Betzing, indicating that the Board was not authorized to receive service as agent for the State. The fact that the Board sent a copy of Longholm's letter to the Attorney General does not dispositively indicate acceptance of service; it merely informs another state agency about the procedure undertaken when a party incorrectly deposits a summons and complaint with the Board. Having informed appellants' attorney of the proper procedure, the onus was on appellants to make service upon the Attorney General. Furthermore, mere knowledge of an action is not a substitute for service, nor does it raise any estoppel to contest the validity of service. (See *In re Abrams* (1980) 108 Cal.App.3d 685, 693 [166 Cal.Rptr. 749], and cases cited therein.)

service valid. (*Id.*, at pp. 779-781.) We are of the opinion that the case before us differs from *Pasadena* in two respects. First, the evidence on the issue of ostensible agency in *Pasadena* was uncontroverted; here, the declarations were contradictory and acceptance of the State's depiction of events supported rejection of the ostensible agency/authority position urged by appellants. Second, the defendant corporation's designation of its secretary-treasurer in the stock permit application was a representation from a principal clothing Binney, Sr., with ostensible authority. Unlike *Pasadena*, the declarations of Longholm and Betzing belie that any employees of Board made statements about authorization to accept service on behalf of the State. These two critical differences make *Pasadena* inapposite. Substantial evidence supports the lower court's implied determination that the Board was not an ostensible agent for the State nor had ostensible authority as an agent for purposes of service of process.

The resolution of the ostensible authority issue likewise disposes of appellants' contention that the State was *estopped* to assert the three-year bar of section 581a because the Attorney General had designated the Board as his agent for service.[12] ■ Equitable estoppel is proven when the following elements are present: (1) the party to be estopped was apprised of the facts; (2) such party intended that its conduct would be acted upon or acted so that the party asserting the estoppel had a right to believe it was so intended; (3) the other party was ignorant of the true state of facts; and (4) the other party relied upon the conduct to its injury. (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5352.) ■ Estoppel is operative against the government where "the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel." (*City of Long Beach* v. *Mansell* (1970) 3 Cal.3d 462, 496-497 [91 Cal.Rptr. 23, 476 P.2d 423].) Whether there is an estoppel is chiefly a question of fact. (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 132, p. 5352.)

■ The declarations proffered by the State negate appellants' claims of ostensible authority and estoppel. Since Longholm and Betz-

---

[12]As indicated earlier, our Supreme Court has recognized that "[Several] cases equate the elements of ostensible authority with those of estoppel." (*Pasadena Medi-Center Associates* v. *Superior Court, supra*, 9 Cal.3d at p. 779, fn. 5.)

ing denied that the Board engaged in any conduct indicative of ostensible agency, the second element of estoppel was not established. Moreover, the form letter showed by Betzing and sent to appellants' attorney by Longholm undercuts the fourth element—i.e., that appellants were ignorant of the fact that Government Code section 955.4 mandated service upon the Attorney General. Since no estoppel exists where one of its elements is missing (*ibid.*), the trial court properly dismissed the action based upon its decision to credit the declarations submitted by the State.

Appellants argue, nonetheless, that an estoppel was established, relying upon the case of *State Air Resources Bd. v. Superior Court, supra,* 93 Cal.App.3d 803. There, plaintiff corporation's president telephoned the general counsel of the Air Resources Board, asking him to accept service on behalf of the board. In reliance upon the president's representation about dismissal of the action as soon as the necessary consent was obtained from a majority of corporation's stockholders, the general counsel executed an acknowledgment of service provided by counsel for plaintiff. Contemporaneous with this service and upon request of the general counsel, plaintiff corporation granted an open-ended extension of time to plead to the board. Nothing happened for 17 months, and plaintiff corporation's counsel notified the Attorney General that a responsive pleading would be required within 30 days. The Attorney General filed a general demurrer and motion to dismiss; a dismissal was ordered as to the state but not as to the board. Upon a writ petition, the board contended that dismissal was required, since service should have been made on the Attorney General pursuant to Government Code sections 940.6 and 955.4. Plaintiff corporation argued that the general counsel's conduct estopped the board from denying service of process. The appellate court affirmed the lower court's determination that estoppel was established. (*Id.,* at pp. 809-810.)

A review of *State Air Resources* shows that it is factually divergent from the present situation. In *State Air Resources*, a *lay person* (president of a plaintiff corporation) *relied upon a written acknowledgment of service* prepared by the *general counsel* of the board. This was sufficient to prove estoppel, with the appellate court finding "substantial evidence to support the trial court's resolution of the issues of fact before it, . . ." (*State Air Resources Bd. v. Superior Court, supra,* 93 Cal.App.3d at p. 809.) The present circumstances are radically different: appellants' *attorney* was advised that the Board had *no authorization* to accept service for the State by *an office supervisor* and

*assistant executive secretary of the Board* (according to declarations by Longholm and Betzing). Such a factual setting supports the implied determination that *no estoppel* was established against the State of California. Since the facts underlying the estoppel in *State Air Resources* are not operative here, the case does not bring a contrary result in the instant appeal.[13]

Thus, we find the trial court did not err in dismissing the action and quashing the service of the summons and complaint. Substantial evidence shows that neither ostensible authority nor equitable estoppel were cognizable claims against the State. Since no judicially recognized exception was proven and appellants failed to prove reasonable diligence in their efforts at service, dismissal was mandated by section 581a.[14]

### THE APPEAL AGAINST CITY OF MANTECA, THOMPSON AND SORRNICK

As indicated earlier, the trial court struck portions of a declaration by appellants' attorney as "surplusage" and as having "no evidentiary value" upon an oral motion by defendants City of Manteca, Thompson and Sorrnick at a hearing on a subsequent request for dismissal. Appellants contend that error was committed in striking the declaration, since the oral motion producing the decision to strike was untimely. This is premised on appellants' assertion that "the trial court should not have even entertained the motion to strike at the time of the hearing because any opposition should have been made known within 15 days after service of the written opposition. (Rule 203.5, subd. [*sic*] (c)." We are not persuaded for the following reasons.

First, rule 203.5(c) of the California Rules of Court indicates that the moving party *may* serve a response to opposition papers; its provisions are not mandatory and do not address the procedure to be followed when challenging the admissibility of declarations.

Second, it was appropriate to challenge portions of the declarations by oral motion at the hearing in front of the trial judge. Since declarations containing hearsay or mere conclusions are competent evidence if

---

[13]Determining that *State Air Resources* is inapposite to the present matter makes it unnecessary to discuss State's contention that "*Air Resources*, simply stated, totally misreads the doctrine of equitable estoppel."

[14]Since we have an adequate record of the documentary evidence before the trial court, no remand procedure is necessary in the present case. (Contrast with *Searle* v. *Superior Court* (1981) 117 Cal.App.3d 539, 545 [172 Cal.Rptr. 841].)

received without objection or motion to strike, challenging the declarations at the dismissal proceeding was a proper means of excluding the surplusage having little evidentiary value. (See *Waller* v. *Waller* (1970) 3 Cal.App.3d 456, 464 [83 Cal.Rptr. 533].)

Finally, even if appellants are correct on this point, any error was nonprejudicial. Most of the information contained in the excised portions was also contained in appellants' complaint of record. Furthermore, the stricken parts were immaterial to the merits of the section 583, subdivision (a), contention under consideration. Any error was therefore harmless.

■  Appellants finally contend that it was an abuse of discretion for the trial court to dismiss their action pursuant to section 583, subdivision (a). We disagree.

■  Section 583, subdivision (a), allows the trial court, in its discretion, to dismiss an action for want of prosecution if it is not brought to trial within two years after filing the complaint. A trial court possesses a wide range of discretion under this provision and its determination will be reversed only upon a manifest abuse of discretion resulting in a miscarriage of justice. (See *Martindale* v. *Superior Court* (1970) 2 Cal.3d 568, 574 [86 Cal.Rptr. 71, 468 P.2d 199]; *Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193]; *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 404 [153 Cal.Rptr. 912].) ■ The burden is on plaintiff to justify his delay in bringing the case to trial, and it is his duty to use diligence at every stage of the proceedings in order to expedite his case to a final determination. (*Corlett* v. *Gordon* (1980) 106 Cal.App.3d 1005, 1012-1013 [165 Cal.Rptr. 524]; *Lowe* v. *Thomas* (1970) 11 Cal.App.3d 867, 869-870 [90 Cal.Rptr. 202].) Although public policy normally favors trial on the merits, there is a competing policy expressed by the Legislature in section 583, subdivision (a), which seeks to prevent unreasonable delays in litigation. (*Kunzler* v. *Karde* (1980) 109 Cal.App.3d 683, 688 [167 Cal.Rptr. 425]; see also *Garza* v. *Delano Union Elementary School Dist.* (1980) 110 Cal.App.3d 303, 310 [167 Cal.Rptr. 629].)

■  The record before us shows no abuse of discretion in dismissing appellants' action against defendants City of Manteca, Thompson and Sorrnick. Counsel claimed that his dilatoriness was caused by the hospitalization of his father from November 21, 1977, to June 29, 1978 (date of his father's death), which disrupted his practice (i.e., as a *sole practi-*

*tioner).* Although illness and disruption in a small law firm has constituted cause for delay under particular facts (see *Denham* v. *Superior Court, supra,* 2 Cal.3d at pp. 560-563), there is no showing as to why the hiatus attributable to his father's illness prevented appellants' attorney from serving a summons and complaint. The record clearly shows that almost three years transpired between the filing of the complaint and service upon defendants City of Manteca, Thompson and Sorrnick. Thus, even with the above incident in mind, no explanation of record is provided for the delay prior to the accident or following the death of the father. Pertinent case law reveals that sole practitioners are not to be judged by a different standard as far as determining diligence under section 583, subdivision (a). (See, e.g., *Kunzler* v. *Karde, supra,* 109 Cal.App.3d at pp. 686-687, 689-690; *Corlett* v. *Gordon, supra,* 106 Cal.App.3d at pp. 1014-1015; *Brown* v. *Pacific Tel. & Tel. Co.* (1980) 105 Cal.App.3d 482, 484, 487-488 [164 Cal.Rptr. 445].) As cogently noted in *Brown, supra,* at page 488, "'An attorney owes an obligation not only to his client but also to the courts and the justice system not to undertake legal representation in matters unless he has adequate time to pursue the matter with reasonable diligence. When an attorney takes on more than he can properly handle, he jeopardizes both his client's cause and the public interest in sound and efficient administration of justice.'" (Quoting *Lopez* v. *Larson, supra,* 91 Cal.App.3d at p. 400.)

Appellants also contend that defendants showed no prejudicial delay from the 11th-hour service, since police officers in this case probably wrote reports of the activities surrounding the false imprisonment incident which could be used to refresh their memories in the event of trial. We find this contention sheer speculation, and appellants do not substantiate it by presenting evidence of police reports in the trial record or by including such information in the appellate record. The potential prejudice suffered by defendants in such cases as the present one is persuasively outlined in *Brown* v. *Pacific Tel. & Tel. Co., supra,* 105 Cal.App.3d at page 488: "We point out that the *Lopez* case also stated that a long delay in serving a summons and complaint 'constitutes a particularly pernicious form of delay in terms of potential prejudice' to a defendant (91 Cal.App.3d at p. 402) because, without awareness of the pending suit, the passage of time may effectively preclude a defendant from adequately preparing his defense; witnesses may disappear and evidence may be lost." Since the percipient witnesses here (the police officers) might disappear or be increasingly unavailable as time passes, prejudice is adequately demonstrated. Furthermore, applying

the factors set forth in rule 203.5(e) of the California Rules of Court,[15] there was just cause for believing that "the interests of justice are best served by dismissal ... of the case." (Rule 203.5(e), Cal. Rules of Court.)

Given appellants' failure to show adequate reasons for their delay in prosecuting the action, we find it was not erroneous to dismiss the case against defendants City of Manteca, Thompson and Sorrnick. (*Sanborn v. Chronicle Pub. Co.* (1976) 18 Cal.3d 406, 418 [134 Cal.Rptr. 402, 556 P.2d 764].)

The judgments as to State of California, City of Manteca, Thompson, and Sorrnick are affirmed.

Hopper, Acting P. J., and Allen, J.,* concurred.

---

[15]One particular factor pertinent here is "... the nature of any extensions of time or other delay attributable to either party ...." (Rule 203.5(e), Cal. Rules of Court.)

*Assigned by the Chairperson of the Judicial Council.