[Civ. No. 63551. Second Dist., Div. Five. Oct. 14, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
SURETY INSURANCE COMPANY OF CALIFORNIA,
Defendant and Appellant.

COUNSEL

Ernest Porras and Porras & Wong for Defendant and Appellant.

John K. Van de Kamp, District Attorney, Donald J. Kaplan and Eugene D. Tavris, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

**FEINERMAN, P. J.**—This is an appeal from an order denying a motion to vacate the forfeiture of an appeal bond and to exonerate the bond which had been posted on behalf of Uriel Oreguera Torres, who had been convicted of a violation of Health and Safety Code section 11351 and had been admitted to bail in the amount of $30,000 pending the hearing and determination of his appeal.

The sole issue on appeal is whether the bail surety (Surety Insurance Company of California) is liable on a bail bond negotiated and written in the name of its former attorney-in-fact whose power of attorney had been revoked approximately two years before the posting of the bail bond. We have examined the entire record and have concluded that the order denying relief from forfeiture must be reversed and the trial court directed to vacate the forfeiture and to exonerate the bond.

STATEMENT OF FACTS

On or about May 21, 1975, the Surety Insurance Company of California (Surety) mailed a general power of attorney to the Los Angeles County Clerk's office authorizing Ray W. Jones to execute bail bonds and appeal bonds on its behalf. On July 26, 1977, a revocation of Ray W. Jones' power of attorney was filed in the Los Angeles County Clerk's office. The document was dated July 20, 1977, and was signed by John F. Merrill, President of Surety, and was notarized by Carolyn J. Marcus. The official seal affixed to the document stated that the notary's commission "expires Feb. 4, 1981."

On April 20, 1979, an appeal bond in the amount of $30,000 was posted for defendant Torres' release. The bond was posted through Flores Bail Bonds and identified Surety as the bail surety and Ray W. Jones as the attorney-in-fact. The document in question bears the signature of Carolyn J. Marcus as notary public. The official seal affixed

to the document stated that the notary's commission *"expires on February 4, 1977."* The February 4, 1977 date also appears in a printed blank space calling for the expiration date of the notary's commission.

On November 7, 1980, the defendant Torres failed to appear for return on the remittitur. The trial court issued a bench warrant for the defendant's arrest and ordered the bail bond on appeal to be forfeited. Notice of the forfeiture was mailed to Flores Bail Bonds and Surety on November 14, 1980.

On May 5, 1981, a motion to vacate the forfeiture and exonerate the bond was filed on behalf of Surety. The motion was heard by the trial court on May 26, 1981, and was denied without prejudice. A motion for reconsideration was set for hearing for June 8, 1981, and continued to June 10, 1981. On that date Surety's motion for reconsideration of the May 26, 1981, order was argued and denied by the trial court.

The June 10, 1981, hearing was interrupted by Attorney Luis H. Garcia, who identified himself as the attorney for the father of defendant Torres. Attorney Garcia told the trial judge that the reason why the defendant had not appeared for return on the remittitur was because he had died in Mexico. Garcia also advised the trial court that his client, defendant Torres' father, had sent telegrams to the court indicating that his son had died. The following colloquy then occurred between the court and Attorney Garcia.

"THE COURT: Did he ever contact the Surety, that is, the Surety agent who put up the bond? [¶] And I realize what has occurred in this case is obviously the Surety required the assets of this particular individual to be pledged on behalf of the bond, didn't they?

"MR. GARCIA: Right.

"THE COURT: Now this morning they are in here arguing they didn't really have any bond, all they had was an instrument on file here that was worth nothing more than a two cent, should we say, piece of paper. But they have this man's assets in hock.

"MR. GARCIA: What is worrying him now he says, 'All my life savings are in risk, in danger now.'

"THE COURT: True.

"MR. GARCIA: And he is saying that he gave notice to—

"THE COURT: To whom did he give it, to the Surety?

"MR. GARCIA: Apparently the Surety gave notice to him that he had to bring the boy here or that he had to prove that the boy had died. [¶] So he went to Mexico apparently 45 days before the 180 days expired and obtained a certified document from Mexico, a death certificate, and he gave it to another person that masquerades as an attorney and something happened and this man has just been the victim of what happened.

"Notice hasn't apparently come up to the court, consequently the bond was forfeited and he is out $30,000."

The defendant's father was never called as a witness and Attorney Garcia was never sworn and did not testify as a witness. A Penal Code section 1305 motion to excuse the nonappearance of the defendant because of death was never made and a death certificate was never filed with the court.

Surety contends that it cannot be held liable on any bonds written by Raymond W. Jones after it notified the Los Angeles County Clerk that Jones' authority to act as its attorney-in-fact had been terminated. Surety also contends that the Los Angeles County Clerk was negligent in accepting the appeal bond for filing on April 20, 1979, in light of the fact that the face of the document clearly indicated that the notary's commission had expired on February 4, 1977. Respondent concedes that Surety is not liable unless Jones was its authorized agent, but it contends that the constellation of facts in this case is sufficient to impose liability on theories of ostensible authority and ratification.

### DISCUSSION

■ The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. (*People* v. *United Bonding Ins. Co.* (1971) 5 Cal. 3d 898, 906 [98 Cal.Rptr. 57, 489 P.2d 1385]; *People* v. *Earhart* (1972) 28 Cal.App.3d 840, 844 [104 Cal.Rptr. 322].) Thus, Penal Code sections 1305 and 1306 dealing with forfeitures of bail bonds must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture. *People* v. *Wilshire Ins. Co.* (1975) 46 Cal.App.3d 216, 220 [119 Cal.Rptr. 917].)

■ Respondent relies upon a two-pronged approach in its attempt to fasten liability on Surety on an ostensible authority theory. First, it alleges that Raymond W. Jones was permitted to possess blank surety forms on

which he could fill in the blanks and write bail bonds. After the revocation of Jones' authority, respondent surmises Jones either kept a blank form or copied the form which was used for the bail posting in the case at bench. Given those facts, respondent argues that ostensible authority can be inferred by reason of the principal's act of permitting the agent to possess or retain the indicia of authority.

The fallacy in this argument is the fact that the record is devoid of any evidence indicating any "want of ordinary care" on the part of Surety in dealing with Jones. There is no evidence before us indicating how Jones obtained the bail form he used and no evidence of any kind indicating that Surety permitted Jones to keep blank bail forms when it terminated his authority as an attorney-in-fact in 1977. "Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." (Civ. Code, § 2317; *House* v. *State of California* (1981) 119 Cal.App.3d 861, 874-875 [174 Cal.Rptr. 279].) Ostensible authority is not established by the statements and representations of the agent. It is created only by the acts or declarations of the principal. (*Howell* v. *Courtesy Chevrolet, Inc.* (1971) 16 Cal.App.3d 391, 401 [94 Cal.Rptr. 33]; *Morse* v. *Pacific Gas & Elec. Co.* (1957) 152 Cal.App.2d 854, 857 [314 P.2d 192].)

Moreover, it is well established that before recovery may be had against a principal for the act of an ostensible agent, the third person in relying on the agent's apparent authority must not be guilty of negligence. (*Associated Creditor's Agency* v. *Davis* (1975) 13 Cal.3d 374, 399-400 [118 Cal.Rptr. 772, 530 P.2d 1084].) Here, the Los Angeles County Clerk's office was patently negligent in failing to check its own records when it accepted the appeal bond for filing in 1979. If it had done so, it would have found the 1977 revocation of Jones' authority. What was even more obvious was the defective acknowledgement on the appeal bond filed in 1979. Like beacon lights reflecting in the darkness, there were two affirmations of the fact that the notary's commission expired on February 4, 1977. Any reasonable prudent deputy county clerk reading the face of the document tendered for filing should have been alerted to the fact that "something was rotten in the state of Denmark."

The degree of care required by the People in the filing of a bail bond was delineated in *People* v. *Follette* (1925) 74 Cal.App. 178 at page 221 [240 P. 502] as follows: "It is the duty of a magistrate, in accepting bail, to the very limit of his knowledge and in the exercise of the greatest care, to see that the bail bond he accepts is legal in form; that the sureties whose names are signed thereto are the persons they purport to be; and

that they are able to respond to the full extent of the penalty thereof in case the principal fails to comply with the conditions of said bond. The magistrate accepting bail is the sole representative of the law, standing between the people of the state on one hand, and those accused of crime upon the other, and if he fails in his duty then efficient law enforcement is rendered impossible.'' Age has not sapped the vitality of this holding. Measured by the standard of care set forth in *Follette,* the actions of the county clerk's office in this case must be found to be wanting.

Respondent's second prong in its attempt to establish ostensible authority is the contention that Surety should have notified the Insurance Commissioner of California of the July 20, 1977, revocation of Jones' authority pursuant to the provisions of Insurance Code section 1815.[1]

Respondent asserts that Surety, by filing such notification with the Insurance Commissioner, would have caused the commissioner to promptly notify the county clerk of the revocation of Jones' authority, ''thereby establishing the lack of authority notwithstanding Mr. Jones' continued possession of blank bail bond forms.'' We point out that there is no requirement that notice of the revocation of a bail agent's authority be given to the Insurance Commissioner. Section 1815 of the Insurance Code is designed to accommodate insurance companies and to obviate the necessity of an insurance company having to notify every county clerk in the State of California that a bail agent's authority has been revoked. In this case prompt notice of the revocation of Jones' authority was given to the Los Angeles County Clerk. Further notice to the Insurance Commissioner was unnecessary.

Respondent's contentions regarding ratification are also resting on slender reeds. Respondent states the law correctly when it asserts that ''a principal ratifies an agent's acts when he knows of the acts and accepts the benefits which flow from them'' (See *Rakestraw* v. *Rodrigues* (1972) 8 Cal.3d 67, 73 [104 Cal.Rptr. 57, 500 P.2d 1401].) A principal may even ratify the forgery of his signature by his agent. (*Volandri* v. *Hlobil* (1959) 170 Cal.App.2d 656, 659-660 [339 P.2d 218].)

In an attempt to come within the ''acceptance of benefits'' rule, respondent directs our attention to the dialogue between the trial judge and Attorney Garcia in open court on June 10, 1981, and argues that

[1]Insurance Code section 1815 provides: ''The commissioner shall certify the names of holders of bail agents' and bail permittees' licenses and their solicitors to every county clerk of the State, together with their license numbers and any other information in respect to such persons as he considers advisable. He shall promptly upon termination, for any cause, of such license, notify the respective county clerks.''

Surety should be estopped from disputing Jones' authority because it required the assets of defendant Torres' father to be pledged on behalf of the appeal bond.

Evidence Code section 1200 provides: "(a) 'Hearsay evidence' is evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated. [¶] (b) Except as provided by law, hearsay evidence is inadmissible."

We know of no exception to the hearsay rule that would render admissible the trial judge's or Attorney Garcia's comments which are set forth in the statement of facts. A court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file. (*Day* v. *Sharp* (1975) 50 Cal.App.3d 904, 914 [123 Cal.Rptr. 918]; Jefferson, Cal. Evidence Benchbook (2d ed. 1982) pp. 1766-1768; see also *Tarr* v. *Merco Constr. Engineers, Inc.* (1978) 84 Cal.App.3d 707, 715 [148 Cal.Rptr. 813].) The trial court's statements and Attorney Garcia's statements and accusations were made without any contest or adversary proceeding. We do not have any judicial findings of fact made after an adversary hearing, which constitute an uncontrovertible matter as part of a court record that is the subject of judicial notice.

Respondent also contends that, by remaining silent until after the bail forfeiture had occurred, Surety ratified the contract by implication. However, respondent neglects to point to any evidence in the record that Surety had knowledge of the bail bond prior to the order of forfeiture. Speculation and surmise are not substitutes for substantial evidence.

The order denying relief from the forfeiture is reversed and the trial court is directed to vacate the forfeiture and to exonerate the bond.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied November 8, 1982.